

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
07/03/2019

| | | |
|---|---|---|
| In re: | § | Case No. 19-33694 (DRJ) |
| | § | |
| WEATHERFORD INTERNATIONAL | § | Chapter 11 |
| PLC, *et al.*, | § | |
| | § | (Joint Administration Requested) |
| Debtors. [1] | § | |
| | § | |

**ORDER (I) CONDITIONALLY APPROVING DISCLOSURE
STATEMENT, (II) SCHEDULING COMBINED HEARING
ON (A) ADEQUACY OF DISCLOSURE STATEMENT AND (B)
CONFIRMATION OF PLAN, (III) ESTABLISHING DEADLINE TO
OBJECT TO DISCLOSURE STATEMENT AND PLAN AND FORM
OF NOTICE THEREOF, (IV) APPROVING SOLICITATION
PROCEDURES AND FORMS OF BALLOTS AND NOTICE OF
NON-VOTING STATUS, (V) CONDITIONALLY WAIVING REQUIREMENT
OF FILING SCHEDULES AND STATEMENTS AND OF CONVENING
SECTION 341 MEETING OF CREDITORS, AND (IV) GRANTING RELATED RELIEF**

**[Relates to Motion at Docket No. _16_ ]**

Upon the motion (the "**Motion**")[2] of the Debtors for an order under Sections 105(a), 341,

521(a), 1125, 1126 and 1128 of the Bankruptcy Code, Bankruptcy Rules 1007(b), 2002, 2003,

3016, 3017, 3018, 3020, and 9006, Bankruptcy Local Rule 9013-1(b) and the Complex Chapter

11 Procedures for entry of an order (i) conditionally approving the *Disclosure Statement for Joint*

*Prepackaged Plan of Reorganization for Weatherford International plc and Its Affiliate Debtors*

*Under Chapter 11 of the Bankruptcy Code* (the "**Disclosure Statement**"); (ii) scheduling the

Combined Hearing to (a) approve the Disclosure Statement and (b) consider confirmation of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Weatherford International plc (6750); Weatherford International Ltd. (1344); and Weatherford International, LLC (5019). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 2000 St. James Place, Houston, TX 77056.

[2] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

*Joint Prepackaged Plan of Reorganization for Weatherford International plc and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (the "**Plan**"); (iii) establishing August 20, 2019 as the proposed Objection Deadline to object to the adequacy of the Disclosure Statement or confirmation of the Plan; (iv) approving the Solicitation Procedures and the Prepetition Solicitation with respect to the Plan, including the forms of the Ballots and the Notice of Non-Voting Status; (v) approving the form and manner of the Combined Notice which notifies parties in interest of the Combined Hearing, the Objection Deadline, and notice of commencement of the Chapter 11 Cases; (vi) conditionally waiving the requirement that the Debtors file Statements and Schedules so long as the plan is confirmed by the September 13, 2019 SOAL/SOFA Deadline; (vii) conditionally waiving the requirement to convene the meeting of creditors under Section 341 of the Bankruptcy Code so long as the Plan is confirmed by the SOAL/SOFA Deadline; and (viii) granting other relief relating thereto as set forth herein; all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003 and is in the best interests of the Debtors and their

respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation hereon and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.     A Combined Hearing to consider compliance with disclosure and solicitation requirements and confirmation of the Plan is hereby scheduled to be held before this Court on September 11, 2019 at 2:30 p.m. (Prevailing Central Time). The Combined Hearing may be continued from time to time by the Court without further notice other than adjournments announced in open court or in the filing of a notice or a hearing agenda in the Chapter 11 Cases.

2.     Any objections to the Disclosure Statement and/or the Plan shall be: (i) in writing, (ii) filed with the Clerk of the Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, (iv) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules; and (v) be filed with the Bankruptcy Court no later than **5:00 p.m. (Prevailing Central Time) on August 20, 2019** (the "**Objection Deadline**").

3.     Any objections that fail to comply with the requirements set forth in this Order may, in the Court's discretion, not be considered and may be overruled.

4.     The deadline to file any brief in support of the Disclosure Statement and confirmation of the Plan and reply to any objections shall be September 9, 2019 at 5:00 p.m. (Prevailing Central Time) (the "**Reply Deadline**").

5.     The Combined Notice as proposed in the Motion and the form of notice annexed hereto as Exhibit 1 shall be deemed good and sufficient notice of the Combined Hearing and no further notice need be given; *provided*, *however*, that any provision of Bankruptcy Rule 3017(d)

requiring the Debtors to distribute the Disclosure Statement and the Plan to parties not entitled to vote, whether because they are unimpaired or because they are deemed to reject the Plan, or any parties in interest other than as prescribed in this Order, shall be waived; *provided further*, *however*, that the Disclosure Statement and Plan shall remain posted in PDF format to the following page at http://cases.primeclerk.com/weatherford and shall be provided in either electronic or paper form to any parties in interest upon written request to the Debtors.  The Debtors shall also serve a copy of the Combined Notice on all known creditors, interest holders, and interested parties.

6.      Service of the Combined Notice as set forth in the Motion and herein is sufficient notice of the Petition Date, the Combined Hearing, the Objection Deadline, the Reply Deadline and procedures for objecting to the adequacy of the Disclosure Statement and to confirmation of the Plan.

7.      The Debtors, in their discretion, are authorized pursuant to Bankruptcy Rule 2002(*l*), to give supplemental publication notice of the Combined Hearing, within five (5) business days after the entry of the Proposed Order, in the *Houston Chronicle*, the national edition of *USA Today*, electronically on the Debtors' case information website (located at http://cases.primeclerk.com/weatherford), and/or any other trade or other publications the Debtors deem necessary, which publication notice shall constitute good and sufficient notice of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not receive the Combined Notice by mail.

8.      The Debtors are authorized to solicit acceptances of the Plan from Holders of Existing Common Stock in Class 10 of the Plan and continue to solicit acceptances of the Plan from Holders of Prepetition Note Claims in Class 7 of the Plan.

9.      The Disclosure Statement is conditionally approved as having adequate information as required by Section 1125 of the Bankruptcy Code for solicitation purposes only without prejudice to any party with standing objecting to the Disclosure Statement at the Combined Hearing.

10.     The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion, including the Prepetition Solicitation described therein, in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved.

11.     Nominees are required to forward to the beneficial holders of Existing Common Stock in Class 10 of the Plan and Prepetition Note Claims in Class 7 of the Plan (as applicable) Solicitation Packages and notices to the respective beneficial holder within five (5) business days of receiving the Solicitation Packages and related notices.  To the extent the Nominees incur out-of-pocket expenses in connection with distribution of the Combined Notice, the Debtors are authorized, but not directed, to reimburse such entities for their reasonable and customary expenses incurred in this regard.

12.     The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballots are approved.

13.     Within seven (7) business days of the entry of the Scheduling Order, the Debtors will send a notice of non-voting status to Holders of Unexercised Equity Interests that includes a "check the box" opt out of the Releases.

14.     The Notice of Non-Voting Status, substantially in the form attached hereto as Exhibit 2 is approved.  The Debtors are authorized to send the Notice of Non-Voting Status and the Combined Hearing Notice to the Non-Voting Holders in lieu of a Solicitation Package.

15.     The Beneficial Owner Ballot, the Master Ballot, the Class 10 Registered Holder Ballot, the Class 10 Beneficial Holder Ballot, and the Class 10 Master Ballot substantially in the forms attached hereto as Exhibits 3A, 3B, 3C, 3D and 3E respectively are approved.

16.     The time within which the Debtors shall file the Schedules and Statements is extended through and including the SOAL/SOFA Deadline without prejudice to the Debtors' right to seek further extensions of the time within which to file the Schedules and Statements.

17.     The requirement that the Debtors file the Schedules and Statements is permanently waived effective upon the date of confirmation of the Plan, provided confirmation occurs on or before the SOAL/SOFA Deadline.

18.     The necessity to convene and hold the Section 341 Meeting will be waived unless the Plan is not confirmed on or before the SOAL/SOFA Deadline.

19.     The Debtors are authorized to make non-substantive modifications and ministerial changes to any documents in the Solicitation Package without further approval of the Court prior to the dissemination of such documents, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes to the Plan and Disclosure Statement and any other materials included in the Solicitation Package prior to their dissemination.

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of the applicable Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

21.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

22.     Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be effective and enforceable immediately upon entry hereof.

US-DOCS\107885595

23.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

24.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

**Signed:  July 02, 2019.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**Chart A**

Summary Chart of Approved Dates and Deadlines[1]

| Event | Date/Deadline |
|---|---|
| Noteholder Voting Record Date | June 24, 2019 |
| Common Stock Voting Record Date | July 2, 2019 |
| Commencement of Plan Solicitation | June 28, 2019 |
| Petition Date | July 1, 2019 |
| Mailing of Combined Notice | July 8, 2019 |
| Plan Supplement Filing Deadline | 7 days prior to Confirmation Hearing |
| Noteholder Voting Deadline | August 1, 2019 |
| Common Stock Voting Deadline | August 13, 2019 |
| Plan and Disclosure Statement Objection Deadline | August 20, 2019 |
| Reply Deadline | September 9, 2019 |
| Combined Hearing | September 11, 2019 |
| SOAL/SOFA Deadline | September 13, 2019 |

---

[1] To the extent of any conflict between the dates in this chart and those in the Order, the dates in the Order shall control.

# <u>EXHIBIT 1</u>

**Combined Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § § | Case No. 19-33694 (DRJ) |
| WEATHERFORD INTERNATIONAL PLC, *et al.*, | § § § | Chapter 11 |
| Debtors. [1] | § § § | (Jointly Administered) |

**NOTICE OF (I) COMMENCEMENT
OF CHAPTER 11 BANKRUPTCY CASES, (II)
COMBINED HEARING ON DISCLOSURE STATEMENT,
AND CONFIRMATION OF JOINT PREPACKAGED CHAPTER 11
PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINES,
AND SUMMARY OF DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE ENTITLED
> TO VOTE ON THE PLAN.  THEREFORE, YOU SHOULD READ THIS
> NOTICE CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF
> YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

TO:   **ALL HOLDERS OF CLAIMS AGAINST, AND HOLDERS OF EQUITY
INTERESTS IN, WEATHERFORD INTERNATIONAL PLC AND ITS
AFFILIATED DEBTORS AND DEBTORS IN POSSESSION AND ALL OTHER
PARTIES IN INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES.**

**PLEASE TAKE NOTICE THAT** on July 1, 2019 (the "**Petition Date**"), Weatherford International plc and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE THAT** on June 28, 2019, the Debtors commenced solicitation of votes to accept the Plan from the Eligible Holders of Claims in Class 7 (Prepetition Notes Claims), of record as of June 24, 2019 (the "**Noteholder Voting Record Date**") via physical and/or electronic mail.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Weatherford International plc (6750); Weatherford International Ltd. (1344); and Weatherford International, LLC (5019).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 2000 St. James Place, Houston, TX 77056.

**PLEASE TAKE FURTHER NOTICE THAT** upon conditional approval of the Disclosure Statement, the Debtors intend to solicit votes from Class 10 (Existing Common Stock), of record as of JULY 2, 2019 (the "**Common Stock Voting Record Date**") via physical and/or electronic mail.

Only Holders of Claims in Class 7 and Equity Interests in Class 10 are entitled to vote to accept or reject the Plan. All other Classes of Claims and Equity Interests are either deemed to accept or reject the Plan and, therefore, are not entitled to vote.

## VOTING DEADLINES

**PLEASE NOTE THAT CLASS 7 AND CLASS 10 HAVE DIFFERENT VOTING DEADLINES.**

**The deadline for the submission of votes for Holders of Prepetition Notes in Class 7 to accept or reject the Plan is August 1, 2019 at 5:00 p.m. (Prevailing Central Time)** (the "**Noteholder Voting Deadline**").

**The deadline for the submission of votes for Holders of Existing Common Stock in Class 10 to accept or reject the Plan is August 13, 2019 at 5:00 p.m. (Prevailing Central Time)** (the "**Common Stock Voting Deadline**").

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

1.      On the Petition Date, the Debtors filed a "prepackaged" plan of reorganization (the "**Plan**")[2] and a proposed disclosure statement (the "**Disclosure Statement**") pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code. Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk LLC (the "**Voting and Claims Agent**"), at the following website: http://cases.primeclerk.com/weatherford. Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting and Claims Agent at 844-233-5155 (domestic) or 917-942-6392 (international) or by sending an electronic mail message to weatherfordballots@PrimeClerk.com with "Weatherford" in the subject line.

2.      In accordance with Bankruptcy Code Sections 1122 and 1123, the Plan contemplates classifying Holders of Claims and Equity Interests into various Classes for all purposes, including with respect to voting on the Plan, as follows:

---

[2] Capitalized terms used but not otherwise defined herein will have the meanings set forth in the Plan.

US-DOCS\107885595

**SUMMARY OF STATUS AND VOTING RIGHTS**

| Class | Claim/Equity Interest | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 4 | Prepetition Revolving Credit Claims | Unimpaired | Deemed to Accept |
| 5 | Prepetition Term Loan Claims | Unimpaired | Deemed to Accept |
| 6 | Prepetition A&R Claims | Unimpaired | Deemed to Accept |
| 7 | Prepetition Notes Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 9 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 10 | Existing Common Stock[3] | Impaired | Entitled to Vote |
| 11 | Intercompany Equity Interests | Unimpaired | Deemed to Accept |
| 12 | Unexercised Equity Interests | Impaired | Deemed to Reject |

3.      <u>Noteholder Voting Record Date</u>.  The Noteholder Voting Record Date is June 24**,** 2019.  The Noteholder Voting Record Date is the date by which it will be determined which Holders of Claims in Class 7 are entitled to vote on the Plan.

4.      <u>Common Stock Voting Record Date</u>.  The Common Stock Voting Record Date is July 2**,** 2019.  The Common Stock Voting Record Date is the date by which it will be determined which Holders of Equity Interests in Class 10 are entitled to vote on the Plan.

5.      <u>Noteholder Voting Deadline</u>.  The Noteholder Voting Deadline for voting on the Plan is **5:00 p.m. prevailing Central Time on August 1, 2019**.  If you held a Claim against one or more of the Debtors as of the Noteholder Voting Record Date and are entitled to vote to accept or reject the Plan, you should have received a Beneficial Holder Ballot, or a Master Ballot (as applicable) and corresponding voting instructions.  For your vote to be counted, you <u>must</u>: (a) follow such voting instructions carefully, (b) complete <u>all</u> the required information on the Beneficial Holder Ballot, or Master Ballot, as applicable; <u>and</u> (c) sign, date and return your completed Beneficial Holder Ballot, or Master Ballot, as applicable, so that it is **<u>actually received</u>** by the Voting and Claims Agent according to and as set forth in detail in the voting instructions on or before the Noteholder Voting Deadline.  If you are instructed to return your Beneficial Holder

---

[3] This class excludes the Unexercised Equity Interests that are classified in Class 12.

Ballot to your Nominee, you must submit your completed ballot to your Nominee in enough time for your Nominee to send a Master Ballot recording your vote to the Voting and Claims Agent by the Noteholder Voting Deadline. *A failure to follow such instructions may disqualify your vote.*

6.      Common Stock Voting Deadline.  The Common Stock Voting Deadline for voting on the Plan is **5:00 p.m. prevailing Central Time on August 13, 2019**.  If you held an Equity Interest of one or more of the Debtors as of the Common Stock Voting Record Date and are entitled to vote to accept or reject the Plan as a member of Class 10, you should have received a Class 10 Registered Holder Ballot, a Class 10 Beneficial Holder Ballot, or a Class 10 Master Ballot (as applicable) and corresponding voting instructions.  For your vote to be counted, you must: (a) follow such voting instructions carefully, (b) complete all the required information on the Class 10 Registered Holder Ballot, Class 10 Beneficial Holder Ballot, or Class 10 Master Ballot, as applicable; and (c) sign, date and return your completed Class 10 Registered Holder Ballot, Class 10 Beneficial Holder Ballot, or Class 10 Master Ballot, as applicable, so that it is **actually received** by the Voting and Claims Agent according to and as set forth in detail in the voting instructions on or before the Common Stock Voting Deadline.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

7.      Plan Objection Deadline.  The deadline for filing objections to the Plan is **August 20, 2019 at 5:00 p.m. prevailing Central Time** (the "**Objection Deadline**").

8.      Objections to the Plan.  Any objection to the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the Claim or Equity Interest held by such Entity (as defined in Section 101(15) of the Bankruptcy Code; (iv) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Objection Deadline by the parties listed below (the "**Notice Parties**").  CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

## SUMMARY OF THE PLAN[4]

---

[4] The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  For a more detailed description of the Plan, please refer to the Disclosure Statement.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

9.      Solicitation of votes on the Plan commenced prior to the Petition Date.  The following chart summarizes the treatment provided by the Plan to each class of Claims and Equity Interests:

➢   Class 1 - Other Priority Claims

     (a)      *Classification*: Class 1 consists of the Other Priority Claims.

     (b)      *Treatment*:  Subject to Article VIII of the Plan, thereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim as of the effective date (as defined in the Plan, the "**Effective Date**") or (ii) the next Subsequent Distribution Date after the date on which such Class 1 Claim becomes an Allowed Class 1 Claim, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtors or Reorganized Debtors, as applicable (with the consent of the Required Consenting Noteholders in the manner set forth in the RSA): (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to Section 1124 of the Bankruptcy Code; *provided*, *however*, Class 1 Claims incurred by any Debtor in the ordinary course of business may be paid in the ordinary course of business following the occurrence of the Effective Date by the applicable Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

     (c)      *Voting*: Class 1 is an Unimpaired Class, and the Holders of Claims in Class 1 are conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject this Plan.

➢   Class 2 - Other Secured Claims

     (a)      *Classification*:  Class 2 consists of the Other Secured Claims.  Class 2 consists of separate subclasses for each Other Secured Claim.

     (b)      *Treatment*:  Subject to Article VIII of the Plan, thereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim as of the Effective Date or (ii) the next Subsequent Distribution Date after the date on which such Class 2 Claim becomes an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtors or Reorganized Debtors, as applicable (with the consent of

14

the Required Consenting Noteholders in the manner set forth in the RSA): (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; (C) the Collateral securing such Allowed Class 2 Claim; or (D) such other treatment such that it will not be impaired pursuant to Section 1124 of the Bankruptcy Code; *provided*, *however*, Class 2 Claims incurred by any Debtor in the ordinary course of business may be paid in the ordinary course of business following the occurrence of the Effective Date by the applicable Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

(c)     *Voting*: Class 2 is an Unimpaired Class, and the Holders of Claims in Class 2 are conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 2 are not entitled to vote to accept or reject this Plan.

➢   Class 3 - Secured Tax Claims

(a)     *Classification*:  Class 3 consists of the Secured Tax Claims.

(b)     *Treatment*:  Subject to Article VIII of the Plan, thereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Class 3 Claim is an Allowed Class 3 Claim as of the Effective Date or (ii) the next Subsequent Distribution Date after the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3 Claim, at the election of the Debtors or Reorganized Debtors, as applicable (with the consent of the Required Consenting Noteholders in the manner set forth in the RSA): (A) Cash equal to the amount of such Allowed Class 3 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Class 3 Claim will have agreed upon in writing; (C) the Collateral securing such Allowed Class 3 Claim; (D) such other treatment such that it will not be impaired pursuant to Section 1124 of the Bankruptcy Code or (E) pursuant to and in accordance with Sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Class 3 Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtors or Reorganized Debtors, as applicable, pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code; *provided*, *however*, Class 3 Claims incurred by any Debtor in the ordinary course of business may be paid in the ordinary course of business following the occurrence of the Effective

Date by the applicable Reorganized Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  Any installment payments to be made under clause (D) or (E) above will be made in equal quarterly Cash payments beginning on the first applicable Subsequent Distribution Date, and continuing on each Subsequent Distribution Date thereafter until payment in full of the applicable Allowed Class 3 Claim.

(c)    *Voting:*  Class 3 is an Unimpaired Class, and the Holders of Claims in Class 3 will be conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 3 are not entitled to vote to accept or reject this Plan.

➢ Class 4 – Prepetition Revolving Credit Claims

(a)    *Classification:* Class 4 consists of the Prepetition Revolving Credit Claims.

(b)    *Allowance*: The Prepetition Revolving Credit Claims are deemed Allowed in the aggregate principal amount of $316,742,581 plus accrued and unpaid interest thereon.

(c)    *Treatment:*  To the extent not paid in full in Cash prior to the Effective Date, on the Effective Date, the Allowed Prepetition Revolving Credit Claims will, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claims, be indefeasibly paid in full in Cash and the Prepetition Revolving Credit Agreement Liens will be deemed discharged, released, and terminated for all purposes without further action of or by any Person or Entity.

(d)    *Voting:*  Class 4 is an Unimpaired Class, and the Holders of Claims in Class 4 will be conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 4 are not entitled to vote to accept or reject this Plan.

➢ Class 5 – Prepetition Term Loan Claims

(a)    *Classification:* Class 5 consists of the Prepetition Term Loan Claims.

(b)    *Allowance*: The Prepetition Term Loans Claims are deemed Allowed in the aggregate principal amount of $297,500,000 plus accrued and unpaid interest thereon.

(c)    *Treatment:*  To the extent not paid in full in Cash prior to the Effective Date, on the Effective Date, the Allowed Prepetition Term Loan Claims will, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claims, be indefeasibly paid in full in Cash and the Prepetition Term Loan Agreement Liens will be deemed discharged, released, and terminated for all purposes without further action of or by any Person or Entity.

16

(d)     *Voting:* Class 5 is an Unimpaired Class, and the Holders of Claims in Class 5 will be conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 5 are not entitled to vote to accept or reject this Plan.

➤  Class 6 – Prepetition A&R Claims

(a)     *Classification:* Class 6 consists of the Prepetition A&R Claims.

(b)     *Allowance*: The Prepetition A&R Claims are deemed Allowed in the aggregate principal amount of $305,000,000 plus accrued and unpaid interest thereon plus outstanding letters of credit in an amount of $166,000,000.

(c)     *Treatment:*  On the Effective Date, the Allowed Prepetition A&R Claims will, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claims, be indefeasibly paid in full in Cash.  Any letters of credit issued and outstanding as of the Effective Date under the Prepetition A&R Credit Agreement will either be cash collateralized or receive such other treatment as may be acceptable to the Debtors, the Prepetition A&R Credit Agreement Agent, and the Required Consenting Noteholders.

(d)     *Voting:* Class 6 is an Unimpaired Class, and the Holders of Claims in Class 6 will be conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 6 are not entitled to vote to accept or reject this Plan.

➤  Class 7 - Prepetition Notes Claims

(a)     *Classification:* Class 7 consists of the Prepetition Notes Claims.

(b)     *Allowance*: The Prepetition Notes Claims are deemed Allowed in the aggregate principal amount of $7,427,067,000, plus accrued and unpaid interest thereon, consisting of:

(i)      $365,107,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 5.125% Notes;

(ii)     $750,000,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 7.750% Notes;

(iii)    $1,265,000,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 5.875% Notes;

(iv)     $646,286,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 4.500% Notes;

17

(v)  $750,000,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 8.250% Notes;

(vi)  $790,000,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 9.875% 2024 Notes;

(vii)  $453,045,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 6.500% Notes;

(viii)  $461,300,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 7.000% Notes;

(ix)  $250,000,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 9.875% 2039 Notes;

(x)  $462,601,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 6.750% Notes;

(xi)  $374,961,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 5.950% Notes;

(xii)  $600,000,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 9.875% 2025 Notes; and

(xiii)  $258,767,000 in aggregate principal amount, plus accrued and unpaid interest on account of the 6.8000% Notes.

(c)  *Treatment:*  On the Initial Distribution Date, each Holder of an Allowed Prepetition Notes Claim will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim, its Pro Rata share of (i) 99% of the New Common Stock, subject to dilution on account of equity issued pursuant to the New Management Incentive Plan, the Tranche B Equity Conversion (as defined below), and the New Common Stock issuable pursuant to the New Warrants and (ii) the New Tranche B Senior Unsecured Notes; *provided*, *however*, that each of such Holders will have the option, in its sole discretion, to convert its Pro Rata share of $500,000,000 in principal amount of the New Tranche B Senior Unsecured Notes into New Common Stock (the "**Tranche B Equity Conversion**") at a conversion price of $36.20 per share of New Common Stock; *provided*, further that the aggregate principal amount of New Tranche B Senior Unsecured Notes converted into New Common Stock will not exceed $500,000,000.  To the extent that less than $500,000,000 in principal amount of the New Tranche B Senior Unsecured Notes is converted in New Common Stock pursuant to the Tranche B Equity Conversion, any such Holder that elected to convert its full Pro Rata share of New Tranche B Senior Unsecured Notes into New Common Stock in the Tranche B Equity Conversion will also be eligible to exercise its Overallotment Rights. Procedures for the effectuation of the Tranche B Equity Conversion and the

18

Overallotment Rights are set forth in Article V.U of the Plan, thereof.  In addition, each of such Holders will receive Subscription Rights to purchase its Pro Rata share of New Tranche A Senior Unsecured Notes pursuant to the Rights Offering and in accordance with the applicable Rights Offerings Procedures.

(d)     *Voting:* Class 7 is Impaired, and Holders of Claims in Class 7 are entitled to vote to accept or reject this Plan.

➢ Class 8 – General Unsecured Claims

(a)     *Classification:* Class 8 consists of the General Unsecured Claims.

(b)     *Treatment:*  The legal, equitable, and contractual rights of the holders of General Unsecured Claims are unaltered by this Plan.  Except to the extent that a holder of a General Unsecured Claim agrees to a different treatment, on and after the Effective Date, the Debtors will continue to pay (if Allowed) or dispute each General Unsecured Claim in the ordinary course of business in accordance with applicable law.

(c)     *Voting:* Class 8 is an Unimpaired Class, and the Holders of Claims in Class 8 are conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 8 are not entitled to vote to accept or reject this Plan.

➢ Class 9 – Intercompany Claims

(a)     *Classification*: Class 9 consists of the Intercompany Claims.

(b)     *Treatment:*  Subject to the Restructuring Transactions, the Intercompany Claims will be adjusted, reinstated, compromised, or cancelled to the extent determined appropriate by the Debtors, with the consent of the Required Consenting Noteholders.

(c)     *Voting:* Class 9 is an Unimpaired Class and the Holders of Claims in Class 9 are conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 9 are not entitled to vote to accept or reject this Plan.

➢ Class 10 – Existing Common Stock

(a)     *Classification*: Class 10 consists of the Existing Common Stock.[5]

(b)     *Treatment*: On the Effective Date, the Existing Common Stock will be cancelled without further notice to, approval of or action by any Entity.  On the Initial Distribution Date, each Holder of Existing Common Stock will

---

[5] This class excludes the Unexercised Equity Interests that are classified in Class 12.

US-DOCS\107885595

receive its Pro Rata share of (i) 1.0% of the New Common Stock, subject to dilution on account of the equity issued pursuant to the New Management Incentive Plan, the Tranche B Equity Conversion and the New Common Stock issuable pursuant to the New Warrants and (ii) the New Warrants.

The foregoing is offered solely for settlement purposes under Rule 408 of the Federal Rules of Evidence and analogous state law, and such settlement is conditioned on the Bankruptcy Court confirming this Plan and the occurrence of the Effective Date.

     (c)    *Voting*: Class 10 is Impaired, and the Holders of Existing Common Stock in Class 10 are entitled to vote to accept or reject this Plan.

➢ Class 11 – Intercompany Equity Interests

     (a)    *Classification*: Class 11 consists of Intercompany Equity Interests.

     (b)    *Treatment*:   Subject to the Restructuring Transactions and the applicable law of the Debtors' jurisdiction of incorporation, the Intercompany Equity Interests will be reinstated for administrative convenience or cancelled as determined by the Debtors, with the reasonable consent of the Required Consenting Noteholders.

     (c)    *Voting*: Class 11 is an Unimpaired Class and the Holders of Claims in Class 11 are conclusively deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 11 are not entitled to vote to accept or reject this Plan.

➢ Class 12 – Unexercised Equity Interests

     (a)    *Classification*: Class 12 consists of Unexercised Equity Interests.

     (b)    *Treatment*:   On the Effective Date, the Unexercised Equity Interests will be cancelled, and the Holders of such Unexercised Equity Interests will not receive any distribution or retain any property on account of such Unexercised Equity Interests.

     (c)    *Voting*: Class 12 is Impaired, and the Holders of Unexercised Equity Interests in Class 12 will be conclusively deemed to have rejected this Plan pursuant to Section 1126(g) of the Bankruptcy Code. Therefore, Holders of Unexercised Equity Interests in Class 12 will not be entitled to vote to accept or reject this Plan.

### <u>NON-VOTING STATUS OF HOLDERS OF CERTAIN CLAIMS AND EQUITY INTERESTS</u>

10.     As set forth above, certain Holders of Claims and Equity Interests are **not** entitled to vote on the Plan.  As a result, such parties did not receive any ballots and other related solicitation materials to vote on the Plan.  The holders of Claims in Class 1 (Other Priority Claims), Class 2

(Other Secured Claims), Class 3 (Secured Tax Claims), Class 4 (Prepetition Revolving Credit Claims), Class 5 (Prepetition Term Loan Claims), Class 6 (Prepetition A&R Claims), Class 8 (General Unsecured Claims), Class 9 (Intercompany Claims), and Class 11 (Intercompany Equity Interests) are Unimpaired.  Pursuant to Section 1126(f) of the Bankruptcy Code, the Holders of Claims or Equity Interests in each of the foregoing Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote.

11.     Finally, while Class 12 is Impaired, such Holders are not entitled to vote as they are deemed to reject the Plan.  All Classes that are not Affiliates of the Debtors or have not been deemed to have rejected the Plan will be provided with this Combined Notice.  As explained above, the Voting and Claims Agent will provide you, free of charge, with copies of the Plan, the Disclosure Statement, and the Combined Hearing Notice.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN

PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING:

### Article X.B – Release of Claims and Causes of Action

1.     ***Release by the Debtors and their Estates.***  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "Debtor Releasing Parties") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation**

of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; _provided_, _however_, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article X.B</u> shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims or any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement, in each case unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2. _Release By Third Parties_.  Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "<u>Releasing Parties</u>") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third Party Release</u>") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity

Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third Party Release shall not operate to waive or release (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; and/or (iii) any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Equity Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

## Article X.E – Exculpation

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents, the DIP Financing Documents, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including the Restructuring Support Agreement, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the

Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this <u>Article X.E</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in the Plan.

## Article X.G – <u>Injunction</u>

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

## Article X.H – <u>Binding Nature Of Plan</u>

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON AND ENTITY ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.**

US-DOCS\107885595

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

"*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

"*Indemnified Parties*" means each of the Debtors' and their respective Subsidiaries' respective current and former directors, officers, and managers in their respective capacities as such.

"*Non-Debtor Releasing Parties*" means, collectively: (a) the Prepetition Agents; (b) the New Senior Unsecured Notes Indenture Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Notes Indenture Trustee; (f) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (g) the Consenting Noteholders; (h) the Backstop Parties; (i) the Distribution Agents; (j) the Exit Facility Lenders; (k) the Exit Facility Agent; (l) the Holders of Existing Common Stock and Unexercised Equity Interests that do not affirmatively opt out of the Release; and (m) the Prepetition Noteholders that are not party to the Restructuring Support Agreement and do not affirmatively opt out of the Release.

"*Released Party*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

## SECTION 341 MEETING

12.     A meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code (the "**Section 341(a) Meeting**") has been deferred. **The Section 341(a) Meeting will not be convened if the Plan is confirmed by September 13, 2019.** If the Section 341(a) Meeting will be convened, the Debtors will serve on the parties on whom it served this notice and any other parties entitled to notice pursuant to the Bankruptcy Rules, and post on the website at http://cases.primeclerk.com/Weatherford not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the Section 341(a) Meeting.

25

## **EXHIBIT 2**

**Form of Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 19-33694 (DRJ) |
| | § | |
| WEATHERFORD INTERNATIONAL | § | Chapter 11 |
| PLC, *et al.*, | § | |
| | § | |
| Debtors. [1] | § | (Jointly Administered) |
| | § | |

**FORM OF NOTICE OF NON-VOTING STATUS**

**PLEASE TAKE NOTICE THAT** Weatherford International plc and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**") have commenced solicitation of votes to accept the *Joint Prepackaged Plan of Reorganization for Weatherford International plc and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "**Plan**").[2] Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk LLC (the "**Voting and Claims Agent**"), at http://cases.primeclerk.com/weatherford. Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting and Claims Agent at 844-233-5155 (domestic) or 917-942-6392 (international) or by sending an electronic mail message to weatherfordballots@PrimeClerk.com with "Weatherford" in the subject line.

You are receiving this notice (the "**Notice of Non-Voting Status**") because, according to the Debtors' books and records, you are a holder of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), Class 4 (Prepetition Revolving Credit Claims), Class 5 (Prepetition Term Loan Claims), Class 6 (Prepetition A&R Claims), or Class 8 (General Unsecured Claims).  Pursuant to the terms of the Plan, your Claim against the Debtors is Unimpaired and therefore, pursuant to Section 1126(f) of title 11 of the United States Code, you are deemed to have accepted the Plan.

The deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan is August 20, 2019, at 5:00 p.m. (Prevailing Central Time) (the "**Objection Deadline**").  Any objection to the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the Claim of such Entity; (iv) state with particularity the basis and nature

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Weatherford International plc (6750); Weatherford International Ltd. (1344); and Weatherford International, LLC (5019).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 2000 St. James Place, Houston, TX 77056.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court no later than the Plan Objection Deadline.  CONFIRMATION OBJECTIONS NOT TIMELY FILED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN

PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING:

**Article X.B – Release of Claims and Causes of Action**

1.   ***Release by the Debtors and their Estates*.  Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "Debtor Releasing Parties") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court**

US-DOCS\107885595

or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article X.B</u> shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims or any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement, in each case unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2.    ***Release By Third Parties***.  Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "<u>Releasing Parties</u>") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third Party Release</u>") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or

the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third Party Release shall not operate to waive or release (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; and/or (iii) any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Equity Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

## Article X.E – Exculpation

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents, the DIP Financing Documents, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including the Restructuring Support Agreement, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this Article X.E shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in the Plan.

**Article X.G – <u>Injunction</u>**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

**Article X.H – <u>Binding Nature Of Plan</u>**

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON AND ENTITY ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.

YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

**<u>Relevant Definitions Related to Release and Exculpation Provisions</u>:**

31

"*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

"*Indemnified Parties*" means each of the Debtors' and their respective Subsidiaries' respective current and former directors, officers, and managers in their respective capacities as such.

"*Non-Debtor Releasing Parties*" means, collectively: (a) the Prepetition Agents; (b) the New Senior Unsecured Notes Indenture Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Notes Indenture Trustee; (f) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (g) the Consenting Noteholders; (h) the Backstop Parties; (i) the Distribution Agents; (j) the Exit Facility Lenders; (k) the Exit Facility Agent; (l) the Holders of Existing Common Stock and Unexercised Equity Interests that do not affirmatively opt out of the Release; and (m) the Prepetition Noteholders that are not party to the Restructuring Support Agreement and do not affirmatively opt out of the Release.

"*Released Party*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

## SECTION 341 MEETING

1.     A meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code (the "**Section 341(a) Meeting**") has been deferred. **The Section 341(a) Meeting will not be convened if the Plan is confirmed by September 13, 2019.** If the Section 341(a) Meeting will be convened, the Debtors will serve on the parties on whom it served this notice and any other parties entitled to notice pursuant to the Bankruptcy Rules, and post on the website at http://cases.primeclerk.com/Weatherford not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the Section 341(a) Meeting.

## <u>EXHIBIT 3A</u>

**Beneficial Ballot for Holders of
Class 7 Prepetition Notes Claims**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | Chapter 11 |
| | § | |
| | § | |
| | § | (Jointly Administered) |
| WEATHERFORD INTERNATIONAL | § | IMPORTANT: No chapter 11 case has been |
| PLC, *et al.*, | § | commenced as of the date of distribution of |
| | § | this ballot. This ballot is a prepetition |
| Debtors. [1] | § | solicitation of your vote on a prepackaged |
| | § | plan of reorganization |

**BENEFICIAL HOLDER BALLOT ACCEPTING
OR REJECTING THE JOINT PREPACKAGED PLAN OF
REORGANIZATION FOR WEATHERFORD INTERNATIONAL PLC AND
ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY
CODE OF REORGANIZATION OF WEATHERFORD INTERNATIONAL PLC**

IF YOU ARE AN ELIGIBLE HOLDER, AS DEFINED BELOW, PLEASE READ AND FOLLOW THE
ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT CAREFULLY
BEFORE COMPLETING THIS BALLOT.  BALLOTS ARE ONLY BEING SOLICITED FROM ELIGIBLE
HOLDERS OF CLASS 7 PREPETITION NOTES CLAIMS.[2]

**DO NOT RETURN THIS BALLOT IF YOU ARE NOT AN ELIGIBLE HOLDER[3]**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, ALL (I) PRE-VALIDATED BENEFICIAL HOLDER
BALLOTS; (II) BENEFICIAL HOLDER BALLOTS OF REGISTERED RECORD OWNERS; AND (III)
MASTER BALLOTS CAST ON BEHALF OF BENEFICIAL HOLDER BALLOTS THAT WERE NOT
PRE-VALIDATED MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE ACTUALLY
RECEIVED BY PRIME CLERK LLC (THE "VOTING AND CLAIMS AGENT") ON OR BEFORE 5:00
P.M. PREVAILING CENTRAL TIME ON AUGUST 1, 2019 (THE "NOTEHOLDER VOTING
DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

A.     **IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE OWNER**:[4]

YOUR NOMINEE HAS NOT PRE-VALIDATED THIS BENEFICIAL HOLDER BALLOT, WHICH
MEANS THAT YOU MUST RETURN THIS BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE
IN SUFFICIENT TIME TO PERMIT YOUR NOMINEE TO DELIVER A MASTER BALLOT
INCLUDING YOUR VOTE TO THE VOTING AND CLAIMS AGENT BY THE NOTEHOLDER

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Weatherford International plc (6750); Weatherford International Ltd. (1344); and Weatherford International, LLC (5019).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 2000 St. James Place, Houston, TX 77056.

[2] See a list of applicable CUSIPs/ISINs attached hereto as Annex A

[3] "**Eligible Holder**" means a holder of Prepetition Notes who certifies that they are (i) located inside the United States and are (a) "qualified institutional buyers" (as defined in Rule 144A under the Securities Act) or (b) "accredited investors" (as defined in Rule 501(a) of Regulation D under the Securities Act) or (ii) located outside the United States and are persons other than "U.S. persons" (as defined in Rule 902 under the Securities Act).

[4] "**Nominee**" means the bank, brokerage firm, or the agent thereof as the entity through which the Beneficial Holders hold the Prepetition Notes.

VOTING DEADLINE.  PLEASE FOLLOW THE INSTRUCTIONS OF YOUR NOMINEE TO RETURN YOUR VOTE ON THE PLAN.

_____
_____

**B.**     **IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE VOTING AND CLAIMS AGENT:**

    **EITHER (1) YOUR NOMINEE HAS PRE-VALIDATED THIS BENEFICIAL HOLDER BALLOT FOR YOU; <u>OR</u> (2) YOU HAVE BEEN IDENTIFIED AS A REGISTERED RECORD OWNER OF THE PREPETITION NOTES**

    **THEREFORE, YOU MUST RETURN THIS BENEFICIAL HOLDER BALLOT DIRECTLY TO THE VOTING AND CLAIMS AGENT SO IT IS <u>ACTUALLY RECEIVED</u> ON OR BEFORE THE NOTEHOLDER VOTING DEADLINE**

_____

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Prepackaged Plan of Reorganization for Weatherford International plc and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "**Plan**") as set forth in the Disclosure Statement for the Plan (as may be amended from time to time, the "**Disclosure Statement**").  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Beneficial Holder Ballot because our records indicate that you are a Beneficial Holder of a Class 7 – Prepetition Notes Claim, as of the close of business on June 24, 2019 (the "**Noteholder Voting Record Date**").  Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement, which is included (along with the Plan, Combined Notice and certain other materials) in the Solicitation Package you are receiving with this Beneficial Holder Ballot. If you need to obtain additional solicitation materials, you may contact the Debtors' Voting and Claims Agent by: (1) visiting the Debtors' restructuring website at https://cases.primeclerk.com/weatherford; (2) writing to Weatherford International plc Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (3) calling the Debtors' restructuring hotline at 844-233-5155 (Toll Free) or 917-942-6392 (International) or via email at https://weatherfordballots@primeclerk.com.  You may also obtain these documents (other than a Ballot) and any other pleadings filed in the Debtors' Chapter 11 Cases (once the Chapter 11 Cases are commenced and for a fee) via PACER at:  https://www.txs.uscourts.gov/bankruptcy or free of charge at https://cases.primeclerk.com/weatherford.

This Beneficial Holder Ballot may not be used for any purpose other than (i) casting votes to accept or reject the Plan and (ii) opting out of the Third Party Release.  If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting and Claims Agent <u>immediately</u> at the address, email address, or telephone number set forth above.

You should review the Disclosure Statement and the Plan in their entirety before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 7 – Prepetition Notes Claims under the Plan.  The Bankruptcy Court can confirm the Plan and bind you if the Plan is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the allowed Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of Bankruptcy Code Section 1129(a). If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class rejecting the Plan and (b) otherwise satisfies the requirements of Bankruptcy Code Section 1129(b).  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or affirmatively vote to reject the Plan.  To have your vote counted, you must complete, sign and return this Ballot pursuant to the instructions provided herein, so that your vote is received by the Voting and Claims Agent by the Noteholder Voting Deadline.

US-DOCS\107885595

Before completing this Beneficial Holder Ballot, please read and follow the enclosed "Instructions for Completing this Beneficial Holder Ballot" carefully to ensure that you complete, execute and return this Beneficial Holder Ballot properly.

**Item 1.** **Amount of Claim.**

The undersigned hereby certifies that as of the Noteholder Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for the Beneficial Holder) of Class 7 – Prepetition Notes Claims in the CUSIP as indicated on Annex A hereto and in the following aggregate unpaid principal amount (insert unpaid principal amount in box below if not already entered).  If your Prepetition Notes are held by an Nominee on your behalf and you do not know the amount of the Prepetition Notes held, please contact your Nominee immediately:

$\$_____$

**Item 2.** **Vote on Plan.**

The Holder of the Class 7 – Prepetition Notes Claims against the Debtors set forth in Item 1 above votes to (please check one box below):

☐     **ACCEPT** (vote FOR) the Plan            ☐     **REJECT** (vote AGAINST) the Plan

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**IMPORTANT INFORMATION REGARDING THE RELEASE OF CLAIMS BY THIRD PARTIES**

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, WHICH ARE SET FORTH AT THE END OF THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.

**Check the box below if you elect not to grant the Third Party Release contained in Article X.B.2 of the Plan.  If you are not a signatory to the Restructuring Support Agreement, election to withhold consent is at your option.  If you submit your Ballot with this box checked, then you will be deemed NOT to consent to the Third Party Release set forth in Article X.B.2 of the Plan.  PLEASE BE ADVISED THAT BY NOT CHECKING THE BOX BELOW YOU ELECT TO GRANT THE THIRD-PARTY RELEASE IN EACH AND EVERY CAPACITY IN WHICH YOU HOLD A CLAIM AGAINST, OR EQUITY INTEREST IN, ANY OF THE DEBTORS.  YOU MUST AFFIRMATIVELY CHECK THE BOX BELOW IN ORDER TO OPT-OUT OF THE THIRD PARTY RELEASE.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE X.B.1 OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD PARTY RELEASE.  IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

☐     OPT-OUT ELECTION:  The undersigned elects to opt-out of the Third Party Releases contained in Article X.B.2 of the Plan.

**Item 3.**    **Certifications as to Class 7 – Prepetition Notes Claims Held in Additional Accounts.**

By completing and returning this Beneficial Holder Ballot, the undersigned Beneficial Holder certifies that either (1) it has not submitted any other Ballots for other Class 7 – Prepetition Notes Claims held in other accounts or other record names or (2) it has provided the information specified in the following table for all other Class 7 – Prepetition Notes Claims for which it has submitted additional Beneficial Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED CLASS 7 – PREPETITION NOTES CLAIMS ON A BENEFICIAL HOLDER BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

| | Name of Beneficial Holder | Account Number | Nominee | Principal Amount of Other Class 7 – Prepetition Notes Claims Voted | CUSIP |
|---|---|---|---|---|---|
| 1. | | | | $ | |
| 2. | | | | $ | |
| 3. | | | | $ | |
| 4. | | | | $ | |
| 5. | | | | $ | |
| 6. | | | | $ | |
| 7. | | | | $ | |
| 8. | | | | $ | |
| 9. | | | | $ | |
| 10. | | | | $ | |

**Item 4.**    **Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

a.    that either: (i) the undersigned is the Beneficial Holder of the Class 7 – Prepetition Notes Claims being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a Beneficial Holder of the Class 7 – Prepetition Notes Claims being voted, and, in either case, has full power and authority to vote to accept or reject the Plan with respect to the Claims identified in Item 1 above;

b.    that the undersigned (or in the case of an authorized signatory, the Beneficial Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.    that the undersigned has cast the same vote with respect to all Class 7 – Prepetition Notes Claims in a single Class;

d.    that no other Beneficial Holder Ballots with respect to the amount of the Class 7 – Prepetition Notes Claims identified in Item 1 (as well on Exhibit A hereto) above have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Class 7 Claims, then any such earlier Beneficial Holder Ballots are hereby revoked;

e.    that if applicable, the undersigned has voted in accordance with any obligations pursuant to that certain Restructuring Support Agreement, entered into as of May 10, 2019; and

f.    that the undersigned is an Eligible Holders.

By signing this Beneficial Holder Ballot, the undersigned authorizes and instructs its Nominee (unless this is a pre-validated Beneficial Holder Ballot or the Beneficial Holder Ballot of a Registered Record Owner to be forwarded

directly by the undersigned to the Voting and Claims Agent) (a) to furnish the voting information and the amount of Class 7 – Prepetition Notes Claims the Nominee holds on its behalf in a Master Ballot to be transmitted to the Voting and Claims Agent and (b) to retain this Beneficial Holder Ballot and related information in its records for at least one year after the Effective Date of the Plan.

| | |
|---|---|
| **Name of Holder:** _____ | |
| | **(Print or Type)** |
| **Social Security or Federal Tax Identification Number:** _____ | |
| **Signature:** _____ | |
| **Name of Signatory:** _____ | |
| **(If other than Holder)** | |
| **Title:** _____ | |
| **Address:** _____ | |
| _____ | |
| _____ | |
| **Date Completed:** _____ | |

No fees, commissions or other remuneration will be payable to any person for soliciting votes on the Plan.

If your address or contact information has changed, please note the new information here.

**PLEASE COMPLETE, SIGN AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED TO THE ADDRESSEE SPECIFIED THEREON.**

IF THE VOTING AND CLAIMS AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS BENEFICIAL HOLDER BALLOT (IF PRE-VALIDATED OR IF OF A REGISTERED RECORD OWNER) <u>OR</u> THE MASTER BALLOT INCORPORATING THE VOTE CAST BY THIS BENEFICIAL HOLDER BALLOT ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 1, 2019, THEN YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT WILL <u>NOT</u> BE COUNTED TOWARD CONFIRMATION OF THE PLAN.

IF YOU ARE RETURNING THIS BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE, PLEASE ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR BALLOT AND PROCESS YOUR VOTE ON A MASTER BALLOT SUCH THAT THE MASTER BALLOT IS RECEIVED BY THE VOTING AND CLAIMS AGENT ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 1, 2019.

BALLOTS SENT BY FACSIMILE, TELECOPY OR ELECTRONIC MAIL WILL <u>NOT</u> BE ACCEPTED

| |
|---|
| **Class 7 – Prepetition Notes Claims** |

**INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT**

1.      The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Beneficial Holder Ballot or in these instructions (the "**Ballot Instructions**") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Beneficial Holder Ballot.

2.      To ensure that your vote is counted, you <u>must</u> complete the Beneficial Holder Ballot and take the following steps:  (a) make sure that the information required by Item 1 above has been correctly inserted (if you do not know the amount of your claim, please contact your Nominee); (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 above; (c) provide the information required by Item 3 above, if applicable, <u>and</u> (d) sign, date and return an original of your Beneficial Holder Ballot in accordance with paragraph 3 directly below.

3.      **Return of Beneficial Holder Ballots**:  Your Beneficial Holder Ballot (if pre-validated or if you are a Registered Record Owner) and/or the Master Ballot incorporating the vote cast on your Beneficial Holder Ballot MUST be returned to the Voting and Claims Agent so as to be **actually received** by the Voting and Claims Agent on or before the Noteholder Voting Deadline, which is 5:00 p.m. prevailing Central Time on AUGUST 1, 2019.  To ensure your vote is counted toward confirmation of the Plan, please read the following information carefully so that you understand where your Beneficial Holder Ballot must be sent in order for it to be received before the Noteholder Voting Deadline:

> ➤ <u>Pre-validated Beneficial Holder Ballot and Beneficial Holder Ballots of Registered Record Owners</u>:  If you received a Beneficial Holder Ballot and a return envelope addressed to the Voting and Claims Agent, then you must return your completed Beneficial Holder Ballot <u>directly to the Voting and Claims Agent</u> so that it is **actually received** by the Voting and Claims Agent on or before the Noteholder Voting Deadline.

> ➤ <u>Not pre-validated Beneficial Holder Ballot</u>:  If you received a Beneficial Holder Ballot and a return envelope addressed to your Nominee, you must return your completed Beneficial Holder Ballot <u>directly to your Nominee</u> so that it is **actually received** by the Nominee in sufficient time to permit your Nominee to deliver a Master Ballot including your vote to the Voting and Claims Agent by the Noteholder Voting Deadline.

4.      If a Master Ballot or Beneficial Holder Ballot is received by the Voting and Claims Agent <u>after</u> the Noteholder Voting Deadline, it will not be counted, unless the Debtors have granted an extension of the Noteholder Voting Deadline in writing with respect to such Master Ballot or Beneficial Holder Ballot.  Additionally**,** the following Beneficial Holder Ballots will <u>NOT</u> be counted:

> ➤ any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

> ➤ any Beneficial Holder Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;

> ➤ any Beneficial Holder Ballot that is properly completed, executed and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, or (c) partially accepts and partially rejects the Plan;

> ➤ any Beneficial Holder Ballot submitted by facsimile, telecopy or electronic mail (unless the aforementioned is pre-authorized by the Nominee);

> ➤ any unsigned Beneficial Holder Ballot;

> ➤ any Beneficial Holder Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Voting and Claims Agent), any indenture trustee, or the Debtors' financial or legal advisors; and/or

> ➤ any Beneficial Holder Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

5.  The method of delivery of Beneficial Holder Ballots to the Voting and Claims Agent or your Nominee is at the election and risk of each Holder of a Prepetition Notes Claim.  Except as otherwise provided herein, such delivery will be deemed made to the Voting and Claims Agent only when the Voting and Claims Agent **actually receives** the originally executed Beneficial Holder Ballot or Master Ballot incorporating the Beneficial Holder Ballot.  Instead of effecting delivery by first-class mail, it is recommended, though not required, that Holders use an overnight or hand delivery service.  In all cases, Holders should allow sufficient time to assure timely delivery.

6.  Your Nominee is authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with their customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Owner Ballot, as well as collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

7.  If multiple Beneficial Holder Ballots are received from the same Holder of a Class 7 – Prepetition Notes Claim with respect to the same Class 7 Claim prior to the Noteholder Voting Deadline, the last Beneficial Holder Ballot timely received will supersede and revoke any earlier received Beneficial Holder Ballots.

8.  You must vote all of your Prepetition Notes Claims within Class 7 either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Prepetition Notes Claims within Class 7, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple Prepetition Notes Claims within Class 7 for the purpose of counting them.

9.  The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than (i) to vote to accept or reject the Plan and (ii) opt-out of the Third Party Release.  Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Voting and Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

10.  This Beneficial Holder Ballot does not constitute, and shall not be deemed to be, (a) a proof of Claim or (b) an assertion or admission of a Claim.

11.  Please be sure to sign and date your Beneficial Holder Ballot.  If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting and Claims Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

12.  If you hold Claims in more than one Class under the Plan you may receive more than one Ballot coded for each different Class.  Each Ballot votes only your Claims indicated on that Ballot, so please complete and return each Beneficial Holder Ballot and/or Ballot that you received.

## PLEASE MAIL YOUR BENEFICIAL HOLDER BALLOT PROMPTLY!

### IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,

**PLEASE CALL THE VOTING AND CLAIMS AGENT AT:  844-233-5155 (Domestic) or 917-942-6392 (International).**

---

**IF THE VOTING AND CLAIMS AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS PRE-VALIDATED BENEFICIAL HOLDER BALLOT FROM YOU <u>OR</u> THE MASTER BALLOT CONTAINING YOUR VOTE FROM YOUR NOMINEE ON OR BEFORE THE NOTEHOLDER VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 1, 2019, THEN YOUR VOTE TRANSMITTED HEREBY WILL NOT BE COUNTED.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

<u>**RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED IN THE PLAN**</u>

**Article X.B – <u>Release of Claims and Causes of Action</u>**

1.   ***<u>Release by the Debtors and their Estates</u>***.  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "<u>Debtor Releasing Parties</u>") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *<u>provided</u>, <u>however</u>,* that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote,**

41

consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this **Article X.B** shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims or any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement, in each case unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2.   _**Release By Third Parties**_.  Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "**Releasing Parties**") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) and their respective assets and properties (the "**Third Party Release**") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; **provided**, **however**, that the foregoing provisions of this Third Party Release shall not operate to waive or release (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; and/or (iii) any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations,

US-DOCS\107885595

suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Equity Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

**Article X.E – <u>Exculpation</u>**

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents, the DIP Financing Documents, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including the Restructuring Support Agreement, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of the Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this <u>Article X.E</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in the Plan.

**Article X.G – <u>Injunction</u>**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

**Article X.H – <u>Binding Nature Of Plan</u>**

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON AND ENTITY ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) SHALL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.

YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

**<u>Relevant Definitions Related to Release and Exculpation Provisions:</u>**

"*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

"*Indemnified Parties*" means each of the Debtors' and their respective Subsidiaries' respective current and former directors, officers, and managers in their respective capacities as such.

"*Non-Debtor Releasing Parties*" means, collectively: (a) the Prepetition Agents; (b) the New Senior Unsecured Notes Indenture Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Notes Indenture Trustee; (f) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (g) the Consenting Noteholders; (h) the Backstop Parties; (i) the Distribution Agents; (j) the Exit Facility Lenders; (k) the Exit Facility Agent; (l) the Holders of Existing Common Stock and Unexercised Equity Interests that do not affirmatively opt out of the Release; and (m) the Prepetition Noteholders that are not party to the Restructuring Support Agreement and do not affirmatively opt out of the Release.

"*Released Party*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

US-DOCS\107885595

## ANNEX A

**YOUR MASTER BALLOT AGENT MAY HAVE CHECKED A BOX BELOW TO INDICATE THE CUSIP TO WHICH THIS BENEFICIAL OWNER BALLOT PERTAINS, OR OTHERWISE PROVIDED THAT INFORMATION TO YOU ON A LABEL OR SCHEDULE ATTACHED TO THIS BENEFICIAL OWNER BALLOT.**

**IF YOUR MASTER BALLOT AGENT HAS NOT CHECKED ONE BOX BELOW, PLEASE CHECK THE APPROPRIATE BOX.  IF MORE THAN ONE BOX IN THE CHART BELOW IS CHECKED, YOUR BENEFICIAL OWNER BALLOT WILL NOT BE TABULATED.**

| | Class 7 - Prepetition Notes Claims | |
|---|---|---|
| ☐ | 4.5% Senior Notes due 4/15/2022 | CUSIP 94707VAC4 / ISIN US94707VAC46 |
| ☐ | 5.125% Senior Note due 9/15/2020 | CUSIP 94707VAA8 / ISIN US94707VAA89 |
| ☐ | 5.875% Exchangeable Senior Notes due 7/1/2021 | CUSIP 947075AH0 / ISIN US947075AH03 |
| ☐ | 5.95% Senior Note due 4/15/2042 | CUSIP 94707VAD2 / ISIN US94707VAD29 |
| ☐ | 6.5% Senior Note due 8/1/2036 | CUSIP 947075AB3 / ISIN US947075AB33 |
| ☐ | 6.75% Senior Note due 9/15/2040 | CUSIP 94707VAB6 / ISIN US94707VAB62 |
| ☐ | 6.8% Senior Note due 6/15/2037 | CUSIP 947074AK6 / ISIN US947074AK66 |
| ☐ | 7% Senior Note due 3/15/2038 | CUSIP 947075AE7 / ISIN US947075AE71 |
| ☐ | 7.75% Senior Note due 6/15/2021 | CUSIP 947075AJ6 / ISIN US947075AJ68 |
| ☐ | 8.25% Senior Note due 6/15/2023 | CUSIP 947075AK3 / ISIN US947075AK32 |
| ☐ | 9.875% Senior Note due 2/15/2024 | CUSIP G9508CAA2 / ISIN USG9508CAA20 |
| ☐ | 9.875% Senior Note due 2/15/2024 | CUSIP 947075AL1 / ISIN US947075AL15 |
| ☐ | 9.875% Senior Note due 2/15/2024 | CUSIP 947075AN7 / ISIN US947075AN70 |
| ☐ | 9.875% Senior Note due 3/1/2039 | CUSIP 947075AG2 / ISIN US947075AG20 |
| ☐ | 9.875% Senior Note due 3/1/2025 | CUSIP 94707JAC1 / ISIN US94707JAC18 |
| ☐ | 9.875% Senior Note due 3/1/2025 | CUSIP 94707JAA5 / ISIN US94707JAA51 |
| ☐ | 9.875% Senior Note due 3/1/2025 | CUSIP U9432JAA2 / ISIN USU9432JAA26 |

**EXHIBIT 3B**

**Master Ballot for Holders of
Class 7 Prepetition Notes Claim**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | Chapter 11 |
| | § | |
| WEATHERFORD INTERNATIONAL | § | IMPORTANT: No chapter 11 case has been |
| PLC, *et al.*, | § | commenced as of the date of distribution of |
| | § | this ballot.  This ballot is a prepetition |
| Debtors. [1] | § | solicitation of your vote on a prepackaged |
| | § | plan of reorganization |

**MASTER BALLOT FOR NOMINEES OF**
**BENEFICIAL HOLDERS OF CLASS 7  - PREPETITION NOTES CLAIMS[2]**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS MASTER
HOLDER BALLOT CAREFULLY <u>BEFORE</u> COMPLETING THIS MASTER BALLOT.

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO THAT IT IS**
**<u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING AND CLAIMS AGENT (PRIME CLERK LLC) ON OR**
**BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 1, 2019 (THE "<u>NOTEHOLDER</u>**
**<u>VOTING DEADLINE</u>"):**

The above-captioned debtors and debtors in possession (collectively, the "**<u>Debtors</u>**") are soliciting votes with
respect to the *Joint Prepackaged Plan of Reorganization for Weatherford International plc and Its Affiliate Debtors
Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "**<u>Plan</u>**") as set forth in the
Disclosure Statement for the Plan (as may be amended from time to time, the "**<u>Disclosure Statement</u>**").  Capitalized
terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

This Master Ballot is being sent to you because the Debtors' records indicate that, as of the Noteholder Voting
Record Date (the close of business on June 24, 2019), you are a bank, brokerage firm, or the agent thereof (each, an
"**<u>Nominee</u>**") of one or more beneficial holders (collectively, the "**<u>Beneficial Holders</u>**") (i) of those certain 5.125%
senior unsecured notes due 2020, issued by Weatherford International Ltd. pursuant to the applicable Prepetition Notes
Indenture, in an aggregate principal amount outstanding of $365,107,000; (ii) those certain 7.750% senior unsecured
notes due 2021, issued by Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an
aggregate principal amount outstanding of $750,000,000; (iii) those certain 5.875% exchangeable senior unsecured
notes due 2021, issued by Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an
aggregate principal amount outstanding of $1,265,000,000; (iv) those certain 4.500% senior unsecured notes due 2022,
issued by Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an aggregate
principal amount outstanding of $646,286,000; (v) those certain 8.250% senior unsecured notes due 2023, issued by
Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal
amount outstanding of $750,000,000; (vi) those certain 9.875% senior unsecured notes due 2024, issued by
Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal
amount outstanding of $790,000,000; (vii) those certain 6.500% senior unsecured notes due 2036, issued by
Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal
amount outstanding of $453,045,000; (viii) those certain 7.000% senior unsecured notes due 2038, issued by

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Weatherford International plc
(6750); Weatherford International Ltd. (1344); and Weatherford International, LLC (5019).  The location of the Debtors' U.S. corporate
headquarters and the Debtors' service address is: 2000 St. James Place, Houston, TX 77056.

[2] See list of applicable CUSIPs/ISINs attached hereto as Annex A.

Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal amount outstanding of $461,300,000; (ix) those certain 9.875% senior unsecured notes due 2039, issued by Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal amount outstanding of $250,000,000; (x) those certain 6.750% senior unsecured notes due 2040, issued by Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal amount outstanding of $462,601,000; (xi) those certain 9.875% senior unsecured notes due 2025, issued by Weatherford International LLC pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal amount outstanding of $600,000,000; and (xii) those certain 6.800% senior unsecured notes due 2037, issued by Weatherford International LLC pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal amount outstanding of $258,767,000; and (xiii) those certain 5.950% senior notes due 2042, issued by Weatherford International Ltd. pursuant to the applicable Prepetition Notes Indenture, in an aggregate principal amount outstanding of $374,961,000 (collectively, the "**Prepetition Notes**").

As an Nominee, you are required, within five (5) business days of your receipt of the Solicitation Packages, to deliver a Solicitation Package, including a Beneficial Holder Ballot, to each Beneficial Holder for whom you hold Prepetition Notes as of the Noteholder Voting Record Date and take any action required to enable such Beneficial Holder to timely vote its Claim to accept or reject the Plan. You should include in each Solicitation Package a return envelope addressed to you, unless you choose to pre-validate such Beneficial Holder Ballot, in which case the Solicitation Package should include a return envelope addressed only to Prime Clerk LLC (the "**Voting and Claims Agent**"). With respect to any Beneficial Holder Ballots returned to you, you must (1) execute this Master Ballot so as to reflect the voting instructions given to you and the Third Party Release election set forth in the Beneficial Holder Ballots by the Beneficial Holders for whom you hold Prepetition Notes and (2) forward this Master Ballot to the Voting and Claims Agent in accordance with the Master Ballot Instructions accompanying this Master Ballot.

If you are both the Registered Record Owner and Beneficial Holder of any Prepetition Notes and you wish to vote such Prepetition Notes, you MUST complete a Beneficial Holder Ballot and return it to the Voting and Claims Agent prior to the Noteholder Voting Deadline.

If you need to obtain additional solicitation materials, you may contact the Debtors' Voting and Claims Agent by: (1) visiting the Debtors' restructuring website at https://cases.primeclerk.com/weatherford/; (2) writing to Weatherford International plc Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (3) calling the Debtors' restructuring hotline at 844-233-5155 (Toll Free) or 917-942-6392 (International). You may also obtain these documents (other than a Ballot) and any other pleadings filed in the Debtors' Chapter 11 Cases (once the Chapter 11 Cases are commenced and for a fee) via PACER at: https://www.txs.uscourts.gov/bankruptcy or free of charge at https://cases.primeclerk.com/weatherford/.

This Master Ballot may not be used for any purpose other than (i) casting votes to accept or reject the Plan and (ii) transmitting the Third Party Release elections. If you believe you have received this Master Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting and Claims Agent immediately at the address or telephone number set forth above.

---

**If the Voting and Claims Agent does not actually receive this Master Ballot on or before the Noteholder Voting Deadline, which is 5:00 p.m. prevailing Central Time on August 1, 2019, then the Beneficial Holders' votes transmitted on such Master Ballot will NOT be counted.**

---

Before completing this Master Ballot, please read and follow the enclosed "Instructions for Completing this Master Ballot" carefully to ensure that you complete, execute and return this Master Ballot properly.

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, WHICH ARE SET FORTH AT THE END OF THIS BALLOT. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.

**Item 1.**   **Certification of Authority to Vote.**

The undersigned hereby certifies that, as of the Noteholder Voting Record Date (the close of business on June 24, 2019), the undersigned (please check the applicable box):

❑   is an Nominee for the Beneficial Holders of the aggregate principal amount of Class 7 Prepetition Notes Claims listed in Item 2 below and is the registered Holder of the Prepetition Notes Claims represented by any such Class 7 Prepetition Notes Claims; or

❑   is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by an Nominee that is the registered Holder of the aggregate principal amount of Class 7 Prepetition Notes Claims listed in Item 2 below; or

❑   has been granted a proxy (an original of which is annexed hereto) from (1) an Nominee or (2) a Beneficial Holder, that is the registered Holder of the aggregate amount of the Class 7 Prepetition Notes Claims listed in Item 2 below;

and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 7 Prepetition Notes Claims described in Item 2 below.

**Item 2.**   **Class 7 Claims Vote.**

_Number of Beneficial Holders_:   The undersigned transmits the following votes of Beneficial Holders in respect of their Class 7 Prepetition Notes Claims.  The undersigned certifies that the following Beneficial Holders of Class 7 Prepetition Notes Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of the Debtors' Prepetition Notes as of the Noteholder Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots or other customary and acceptable forms for conveying votes.

_To Properly Complete the Following Table_:   Mark the applicable CUSIP on Annex A and indicate in the appropriate column below the aggregate principal amount of Prepetition Notes voted for each account (please use additional sheets of paper if necessary and, if possible, attach such information to this Master Ballot in the form of the following table).  _Please note_:  (1) each account of a Beneficial Holder must vote all such Beneficial Holder's Class 7 Prepetition Notes Claims to accept or reject the Plan and may _not_ split such vote; and (2) do not count any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan.

US-DOCS\107885595

| Your Customer Account Number For Each Beneficial Holder of Voting Class 7 Prepetition Notes Claims | Face Amount of Prepetition Notes In order to vote on the Plan, the Beneficial Holder must have checked a box in Item 2 on the Beneficial Holder Ballot to ACCEPT or REJECT the Plan. In addition, if the Beneficial Holder returned a signed Beneficial Holder Ballot but did not check a box in Item 2 or checked both boxes in Item 2, the Beneficial Holder Ballot will not be counted for purposes of determining acceptance or rejection of the Plan. | | Consent to Third Party Release Check Below if Beneficial Holder check the "Opt-Out Election" box in Item 2 on the Beneficial Holder Ballot? |
|---|---|---|---|
| | **ACCEPT THE PLAN** | **REJECT THE PLAN** | |
| 1. | $ | $ | ☐ |
| 2. | $ | $ | ☐ |
| 3. | $ | $ | ☐ |
| 4. | $ | $ | ☐ |
| 5. | $ | $ | ☐ |
| 6. | $ | $ | ☐ |
| 7. | $ | $ | ☐ |
| 8. | $ | $ | ☐ |
| 9. | $ | $ | ☐ |
| 10. | $ | $ | ☐ |
| TOTALS: | $ | $ | ☐ |

**Item 3.  Certification as to Transcription of Information from Item 3 of the Beneficial Holder Ballots as to Class 7 Claims Voted Through Other Beneficial Holder Ballots.**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by Beneficial Holders in Item 3 of each of the Beneficial Holder's original Beneficial Holder Ballots, identifying any Class 7 Prepetition Notes Claims for which such Beneficial Holders have submitted other Beneficial Holder Ballots other than to the undersigned:

| Your Customer Account Number For Each Beneficial Holder of Voting Class 7 Prepetition Notes Claims | | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|---|
| | Account Number | Name of Nominee | Name of Holder | Principal Amount of Other Class 7 Prepetition Notes Claims Voted | CUSIP |
| 1. | | | | $ | |
| 2. | | | | $ | |
| 3. | | | | $ | |
| 4. | | | | $ | |
| 5. | | | | $ | |
| 6. | | | | $ | |
| 7. | | | | $ | |
| 8. | | | | $ | |
| 9. | | | | $ | |
| 10. | | | | $ | |

US-DOCS\107885595

**Item 4.   Certification.**

By signing this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)   it has received a copy of the Disclosure Statement, the Beneficial Holder Ballots and the Solicitation Package and has delivered the same to the Beneficial Holders listed on the Beneficial Holder Ballots;

(b)   it has received a completed and signed Beneficial Holder Ballot (or otherwise accepted and customary form for the conveyance of a vote) from each Beneficial Holder listed in Item 2 of this Master Ballot;

(c)   it is the registered Holder of the Prepetition Notes being voted;

(d)   it has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(e)   it has properly disclosed:

i)   the number of Beneficial Holders who completed Beneficial Holder Ballots;

ii)   the respective amounts of the Class 7 Prepetition Notes Claims owned, as the case may be, by each Beneficial Holder who completed a Beneficial Holder Ballot;

iii)   each such Beneficial Holder's respective vote concerning the Plan and election to opt-out or not to opt-out of the Third Party Release;

iv)   each such Beneficial Holder's certification as to other Class 7 Prepetition Notes Claims voted (including votes under multiple CUSIPs); and

v)   the customer account or other identification number for each such Beneficial Holder;

(f)   each such Beneficial Holder has certified to the undersigned that it is eligible to vote on the Plan; and

(g)   it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

| | |
|---|---|
| Name of Nominee: | _____ |
| | (Print or Type) |
| Participant Number: | _____ |
| Name of Proxy Holder or Agent for Nominee: | _____ |
| | (Print or Type) |
| Social Security or Federal Tax Identification Number: | _____ |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than Nominee) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Date Completed: | _____ |

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED VIA FIRST CLASS MAIL, OVERNIGHT COURIER, EMAIL OR HAND DELIVERY TO:**

Weatherford International plc Balloting Center
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street
Suite 1440
New York, NY 10165

Email: weatherfordballots@primeclerk.com

Telephone:  844-233-5155 (Toll Free)
917-942-6392 (International)

**IF THE VOTING AND CLAIMS AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER BALLOT ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 1, 2019, THE VOTES CAST HEREBY WILL <u>NOT</u> BE COUNTED.**

**BALLOTS SENT BY FACSIMILE OR TELECOPY WILL <u>NOT</u> BE ACCEPTED.  MASTER BALLOTS MAY BE SUBMITTED BY EMAIL TO:** *weatherfordballots@primeclerk.com*

| Class 7 — Nominees of Beneficial Holders of Prepetition Notes Claims |
|---|

**INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT**

1.      The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Master Ballot or in these instructions (the "**Master Ballot Instructions**") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Master Ballot.

**HOW TO VOTE:**

2.      Within five (5) business days of your receipt of the Solicitation Packages, you must distribute Solicitation Package(s), including Beneficial Holders Ballots, to each Beneficial Holder of Class 7 Prepetition Notes Claims as of the Noteholder Voting Record Date and take any action required to enable each such Beneficial Holder to timely vote their Claims.

3.      If you are both the record holder and the Beneficial Holder of any principal amount of the Prepetition Notes and you wish to vote any Class 7 Prepetition Notes Claims on account thereof, then you <u>MUST</u> complete and execute an individual Beneficial Holder Ballot and return the same to the Voting and Claims Agent in accordance with these instructions and the instructions attached to such Beneficial Holder Ballot.

4.      If you are transmitting the votes of any Beneficial Holders other than yourself (i.e. you are an Nominee), you may, at your option, elect to pre-validate the Beneficial Holder Ballots sent to you by the Voting and Claims

Agent.  Based on your decision as to whether or not to pre-validate Beneficial Holders Ballots, the instructions in either paragraph (5) or paragraph (6) below apply (but not both).

5.    **PRE-VALIDATED BENEFICIAL HOLDER BALLOTS**:  An Nominee "pre-validates" a Beneficial Holder Ballot by indicating thereon the record holder of the Prepetition Notes Claims voted, the amount of the Prepetition Notes held by the Beneficial Holder and the appropriate account numbers through which the Beneficial Holder's holdings are derived.  The Nominee must also complete and execute the Class 7 Beneficial Holder Ballot (other than Item 2 and Item 3 therein).  If you choose to pre-validate individual Beneficial Holder Ballots, you must immediately:  (a) "pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package sent to you by the Voting and Claims Agent and (b) forward the Solicitation Package to the Beneficial Holder for voting, including:

      i.      the pre-validated Beneficial Holder Ballot;

      ii.     a return envelope addressed to the Voting and Claims Agent as follows: Weatherford International plc Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and

      iii.    clear instructions stating that Beneficial Holders must return their pre-validated Beneficial Holder Ballot directly to the Voting and Claims Agent so that it is **actually received** by the Voting and Claims Agent on or before the Noteholder Voting Deadline.

6.    **NON-PRE-VALIDATED BENEFICIAL HOLDER BALLOTS**: If you do NOT choose to pre-validate individual Beneficial Holder Ballots, you must:

      i.      immediately forward the Solicitation Package(s) sent to you by the Voting and Claims Agent to each Beneficial Holder for voting, including:  (a) the Beneficial Holder Ballot; (b) a return envelope addressed to the Nominee; and (c) clear instructions stating that Beneficial Holders must return their Beneficial Holder Ballot directly to the Nominee so that it is **actually received** by the Nominee with enough time for the Nominee to prepare the Master Ballot in accordance with paragraph (ii) directly below and return the Master Ballot to the Voting and Claims Agent so it is **actually received** by the Voting and Claims Agent on or before the Noteholder Voting Deadline; and

      ii.     upon receipt of completed, executed Beneficial Holder Ballots returned to you by a Beneficial Holder you must:

            ➢    check the appropriate box in Item 1 of the Master Ballot;

            ➢    compile and validate the votes, elections, and other relevant information of each such Beneficial Holder in Item 2 and Item 3 of the Master Ballot using the customer account number or other identification number assigned by you to each such Beneficial Holder;

            ➢    date and execute the Master Ballot;

            ➢    transmit such Master Ballot to the Voting and Claims Agent by the Noteholder Voting Deadline; and

            ➢    retain such Beneficial Holder Ballots in your files for a period of at least one year after the Effective Date of the Plan (as you may be ordered to

produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court).[3]

7.      If a Master Ballot is received <u>after</u> the Noteholder Voting Deadline, it will not be counted, unless the Debtors have granted an extension of the Noteholder Voting Deadline in writing with respect to such Master Ballot. Additionally, the following Master Ballots (and therefore Beneficial Holder Ballots reflected thereon) will <u>NOT</u> be counted:

> ➤ any Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

> ➤ any Master Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;

> ➤ any Master Ballot that is properly completed, executed and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) with respect to a single account number, indicates both an acceptance and rejection of the Plan, or (c) with respect to a single account number, partially accepts and partially rejects the Plan;

> ➤ any Master Ballot submitted by facsimile or telecopy;

> ➤ any unsigned Master Ballot;

> ➤ any Master Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Voting and Claims Agent), any indenture trustee, or the Debtors' financial or legal advisors; and/or

> ➤ any Master Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

8.      Any Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan <u>until</u> you properly complete and deliver to the Voting and Claims Agent a Master Ballot that reflects the vote of such Beneficial Holders by the Noteholder Voting Deadline or otherwise validate the Beneficial Holder Ballot in a manner acceptable to the Voting and Claims Agent.

9.      The method of delivery of Master Ballots to the Voting and Claims Agent is at the election and risk of each Nominee. Except as otherwise provided herein, such delivery will be deemed made only when the Voting and Claims Agent **actually** **receives** the originally executed Master Ballot. Instead of effecting delivery by first-class mail, it is recommended, though not required, that Nominees use an overnight or hand delivery service or submit their ballots via email. In all cases, Nominees should allow sufficient time to assure timely delivery.

10.     If multiple Master Ballots are received from the same Nominee with respect to the same Beneficial Holder Ballot belonging to a Beneficial Holder of a Claim prior to the Noteholder Voting Deadline, the <u>last</u> Master Ballot timely received will supersede and revoke any earlier received Master Ballots. If you receive more than one Beneficial Holder Ballot from the same Beneficial Holder, the latest dated Beneficial Holder Ballot you receive before you submit the Master Ballot shall be deemed to supersede any prior Beneficial Holder Ballots submitted by such Beneficial Holder and you should complete the Master Ballot accordingly.

---

[3] In addition, you are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Owner Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

US-DOCS\107885595

11.     The Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims and you should not accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

12.     This Master Ballot does not constitute, and shall not be deemed to be, (a) a proof of Claim or (b) an assertion or admission of a Claim.

13.     <u>Please be sure to properly execute your Master Ballot</u>.  You must:  (a) sign and date your Master Ballot; (b) if applicable, indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Voting and Claims Agent, the Debtors or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder; and (c) provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

14.     No fees or commissions or other remuneration will be payable to any Nominee for soliciting Beneficial Holder Ballots accepting or rejecting the Plan.  The Debtors will, however, upon request, reimburse you for customary mailing and handling expenses incurred by you in forwarding the Beneficial Holder Ballots and other enclosed materials to your customers.

**PLEASE MAIL YOUR MASTER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT
OR THE VOTING INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE VOTING AND CLAIMS AGENT AT:  844-233-5155 (Toll Free) or 917-942-6392 (International)
Or via email: weatherfordballots@primeclerk.com.**

---

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU
OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE VOTING AND CLAIMS
AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE
ANY STATEMENTS ON BEHALF OF THE DEBTORS WITH RESPECT TO THE PLAN.**

---

**IF THE VOTING AND CLAIMS AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS MASTER BALLOT
ON OR BEFORE THE NOTEHOLDER VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING
CENTRAL TIME ON AUGUST 1, 2019, THEN THE VOTES TRANSMITTED THEREBY WILL NOT BE
COUNTED.**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO
MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS
CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

**<u>RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED IN THE PLAN</u>**

**Article X.B – <u>Release of Claims and Causes of Action</u>**

1.     ***Release by the Debtors and their Estates*.  Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "<u>Debtor Releasing Parties</u>") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge,**

waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "**Debtor Release**") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this **Article X.B** shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims or any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement, in each case unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2.      *Release By Third Parties*.  Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "**Releasing Parties**") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) and their

respective assets and properties (the "Third Party Release") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third Party Release shall not operate to waive or release (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; and/or (iii) any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Equity Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

**Article X.E – Exculpation**

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents, the DIP Financing Documents, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including the Restructuring Support Agreement, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of the Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with,

the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this Article X.E shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in the Plan.

**Article X.G – <u>Injunction</u>**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

**Article X.H – <u>Binding Nature Of Plan</u>**

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON AND ENTITY ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) SHALL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**<u>Relevant Definitions Related to Release and Exculpation Provisions:</u>**

"*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities

as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

"*Indemnified Parties*" means each of the Debtors' and their respective Subsidiaries' respective current and former directors, officers, and managers in their respective capacities as such.

"*Non-Debtor Releasing Parties*" means, collectively: (a) the Prepetition Agents; (b) the New Senior Unsecured Notes Indenture Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Notes Indenture Trustee; (f) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (g) the Consenting Noteholders; (h) the Backstop Parties; (i) the Distribution Agents; (j) the Exit Facility Lenders; (k) the Exit Facility Agent; (l) the Holders of Existing Common Stock and Unexercised Equity Interests that do not affirmatively opt out of the Release; and (m) the Prepetition Noteholders that are not party to the Restructuring Support Agreement and do not affirmatively opt out of the Release.

"*Released Party*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

US-DOCS\107885595

**Annex A**

**Please check one box below to indicate the Plan Class and CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If more than one box in the chart below is checked, your Master Ballot will not be tabulated.**

| Class 7 - Prepetition Notes Claims | |
|---|---|
| ☐ 4.5% Senior Notes due 4/15/2022 | CUSIP 94707VAC4 / ISIN US94707VAC46 |
| ☐ 5.125% Senior Note due 9/15/2020 | CUSIP 94707VAA8 / ISIN US94707VAA89 |
| ☐ 5.875% Exchangeable Senior Notes due 7/1/2021 | CUSIP 947075AH0 / ISIN US947075AH03 |
| ☐ 5.95% Senior Note due 4/15/2042 | CUSIP 94707VAD2 / ISIN US94707VAD29 |
| ☐ 6.5% Senior Note due 8/1/2036 | CUSIP 947075AB3 / ISIN US947075AB33 |
| ☐ 6.75% Senior Note due 9/15/2040 | CUSIP 94707VAB6 / ISIN US94707VAB62 |
| ☐ 6.8% Senior Note due 6/15/2037 | CUSIP 947074AK6 / ISIN US947074AK66 |
| ☐ 7% Senior Note due 3/15/2038 | CUSIP 947075AE7 / ISIN US947075AE71 |
| ☐ 7.75% Senior Note due 6/15/2021 | CUSIP 947075AJ6 / ISIN US947075AJ68 |
| ☐ 8.25% Senior Note due 6/15/2023 | CUSIP 947075AK3 / ISIN US947075AK32 |
| ☐ 9.875% Senior Note due 2/15/2024 | CUSIP G9508CAA2 / ISIN USG9508CAA20 |
| ☐ 9.875% Senior Note due 2/15/2024 | CUSIP 947075AL1 / ISIN US947075AL15 |
| ☐ 9.875% Senior Note due 2/15/2024 | CUSIP 947075AN7 / ISIN US947075AN70 |
| ☐ 9.875% Senior Note due 3/1/2039 | CUSIP 947075AG2 / ISIN US947075AG20 |
| ☐ 9.875% Senior Note due 3/1/2025 | CUSIP 94707JAC1 / ISIN US94707JAC18 |
| ☐ 9.875% Senior Note due 3/1/2025 | CUSIP 94707JAA5 / ISIN US94707JAA51 |
| ☐ 9.875% Senior Note due 3/1/2025 | CUSIP U9432JAA2 / ISIN USU9432JAA26 |

**EXHIBIT 3C**

**Class 10 Ballot for Registered Holders of
Existing Common Stock**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | Chapter 11 |
| WEATHERFORD INTERNATIONAL | § | |
| PLC, *et al.*, | § | (Jointly Administered) |
| | § | |
| Debtors. [1] | § | |
| | § | |

**CLASS 10 REGISTERED HOLDER BALLOT ACCEPTING
OR REJECTING THE JOINT PREPACKAGED PLAN OF
REORGANIZATION FOR WEATHERFORD INTERNATIONAL PLC AND
ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY
CODE OF REORGANIZATION OF WEATHERFORD INTERNATIONAL PLC**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS CLASS 10 REGISTERED HOLDER BALLOT CAREFULLY BEFORE COMPLETING THIS CLASS 10 BALLOT.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, ALL CLASS 10 REGISTERED HOLDER BALLOTS MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE VOTING AND CLAIMS AGENT (PRIME CLERK LLC) ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019 (THE "COMMON STOCK VOTING DEADLINE").**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Prepackaged Plan of Reorganization for Weatherford International plc and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "**Plan**") as set forth in the Disclosure Statement for the Plan (as may be amended from time to time, the "**Disclosure Statement**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

This Class 10 Registered Holder Ballot is being sent to you because the Debtors' records indicate that, as of the Common Stock Voting Record Date (the close of business on July 2, 2019), you are a Registered Holder of Existing Common Stock of Weatherford International plc (a "**Registered Common Stockholder**"). Accordingly, you have the right to vote to accept or reject the Plan.

Pursuant to the Plan, the Existing Common Stock will be cancelled without further notice to, approval of or action by any Entity. Each Registered Common Stockholder shall receive its Pro Rata share of (i) 1.0% of the New Common Stock, subject to dilution on account of the equity issued pursuant to the New Management Incentive Plan, the Tranche B Equity Conversion and the New Common Stock issuable pursuant to the New Warrants and (ii) the New Warrants.

Your rights are described in the Disclosure Statement, which is included (along with the Plan, Combined Notice and certain other materials) in the Solicitation Package you are receiving with this Class 10 Registered Holder Ballot. If you need to obtain additional solicitation materials, you may contact the Debtors' Voting and Claims Agent by: (1) visiting the Debtors' restructuring website at https://cases.primeclerk.com/weatherford/; (2) writing to Weatherford International plc Ballot Processing, c/o Prime Clerk LLC One Grand Central Place, 60 East 42nd Street,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Weatherford International plc (6750); Weatherford International Ltd. (1344); and Weatherford International, LLC (5019). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 2000 St. James Place, Houston, TX 77056.

Suite 1440, New York, NY 10165; and/or (3) calling the Debtors' restructuring hotline at 844-233-5155 (Toll Free) or 917-942-6392 (International) or via email at weatherfordballots@primeclerk.com. You may also obtain these documents (other than a Ballot) and any other pleadings filed in the Debtors' Chapter 11 Cases (for a fee) via PACER at:  www.deb.uscourts.gov or free of charge at cases.primeclerk.com/weatherford.

This Class 10 Registered Holder Ballot may not be used for any purpose other than (i) for casting votes to accept or reject the Plan and (ii) opting out of the Third Party Release.  If you believe you have received this Class 10 Registered Holder Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting and Claims Agent immediately at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan in their entirety before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Equity Interests.  Your Equity Interests have been placed in Class 10 – Existing Common Stock.  The Bankruptcy Court can confirm the Plan and bind you if the Plan is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the allowed Claims or Equity Interests in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of Bankruptcy Code Section 1129(a).  If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class rejecting the Plan and (b) otherwise satisfies the requirements of Bankruptcy Code Section 1129(b).  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or affirmatively vote to reject the Plan.  To have your vote counted, you must complete, sign and return this Ballot to the Voting and Claims Agent by the Common Stock Voting Deadline.

Before completing this Class 10 Registered Holder Ballot, please read and follow the enclosed "Instructions for Completing this Class 10 Registered Holder Ballot" carefully to ensure that you complete, execute and return this Class 10 Registered Holder Ballot properly.

**Item 1. Amount of Claim.**

The undersigned hereby certifies that as of the Common Stock Voting Record Date (the close of business on July 2, 2019), the undersigned was the Registered Common Stockholder (or authorized signatory for the Registered Common Stockholder) of Class 10 – Existing Common Stock of the following number of Equity Interests, as denominated in shares (insert amount in box below if not already completed):

| Amount of Existing Common Stock | _____ (Shares) |
|---|---|

**Item 2. Vote on Plan.**

The Registered Common Stockholder of Class 10 – Existing Common Stock in the amount set above in Item 1 above votes to (please check one box below):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**IMPORTANT INFORMATION REGARDING THE RELEASE OF CLAIMS BY THIRD PARTIES**

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, WHICH ARE SET FORTH AT THE END OF THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.

**Check the box below if you elect not to grant the Third Party Release contained in Article X.B.2 of the Plan.  If you are not a signatory to the Restructuring Support Agreement, election to withhold consent is at your option.  If you submit your Ballot with this box checked, then you will be deemed NOT to consent to the Third Party Release set forth in Article X.B.2 of the Plan.  PLEASE BE ADVISED THAT BY NOT CHECKING THE BOX BELOW YOU ELECT TO GRANT THE THIRD-PARTY RELEASE IN EACH AND EVERY CAPACITY IN WHICH YOU HOLD A CLAIM AGAINST, OR EQUITY INTEREST IN, ANY OF THE DEBTORS.  YOU MUST AFFIRMATIVELY CHECK THE BOX BELOW IN ORDER TO OPT-OUT OF THE THIRD PARTY RELEASE.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE X.B.1 OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD PARTY RELEASE.  IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

☐   OPT-OUT ELECTION:  The undersigned elects to opt-out of the Third Party Releases contained in Article X.B.2 of the Plan.

**Item 3.**   **Certifications as to Class 10 – Existing Common Stock Held in Additional Accounts.**

By completing and returning this Class 10 Registered Holder Ballot, the undersigned Registered Common Stockholder certifies that either (1) it has not submitted any other Ballots for other Class 10 – Existing Common Stock held in other accounts or other record names or (2) it has provided the information specified in the following table for all other Class 10 – Existing Common Stock for which it has submitted additional Class 10 Registered Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED CLASS 10 – EXISTING COMMON STOCK ON A CLASS 10 REGISTERED HOLDER BALLOT OTHER THAN THIS CLASS 10 REGISTERED HOLDER BALLOT.

| Name of Registered Common Stockholder | Account Number | Shares of Other Class 10 – Existing Common Stock Voted |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |

**Item 4.**   **Certifications.**

By signing this Class 10 Registered Holder Ballot, the undersigned Registered Common Stockholder certifies to the Bankruptcy Court and the Debtors:

a.  that either: (i) the undersigned is the Registered Common Stockholder of the Class 10 – Existing Common Stock being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a Registered Common Stockholder of the Class 10 – Existing Common Stock being voted, and, in either case, has the full power and authority to vote to accept or reject the Plan with respect to the Equity Interests identified in Item 1 above;

b.  that the undersigned (or in the case of an authorized signatory, the Registered Common Stockholder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.  that the undersigned has cast the same vote with respect to all Class 10 – Existing Common Stock in a single Class; and

| | |
|---|---|
| **Name of Registered Common Stockholder:** _____ | |
| | **(Print or Type)** |
| **Social Security or Federal Tax Identification Number:** _____ | |
| **Signature:** _____ | |
| **Name of Signatory:** _____ | |
| **(If other than Registered Common Stockholder)** | |
| **Title:** _____ | |
| **Address:** _____ | |
| _____ | |
| _____ | |
| **Date Completed:** _____ | |

No fees, commissions or other remuneration will be payable to any person for soliciting votes on the Plan.

If your address or contact information has changed, please note the new information here.

**PLEASE COMPLETE, SIGN AND DATE THIS CLASS 10 REGISTERED HOLDER BALLOT AND RETURN IT <u>PROMPTLY</u> IN THE ENVELOPE PROVIDED TO THE ADDRESSEE SPECIFIED THEREON.**

IF THE VOTING AND CLAIMS AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS CLASS 10 REGISTERED HOLDER BALLOT ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019, THEN YOUR VOTE TRANSMITTED BY THIS CLASS 10 REGISTERED HOLDER BALLOT WILL <u>NOT</u> BE COUNTED TOWARD CONFIRMATION OF THE PLAN.

BALLOTS SENT BY FACSIMILE, TELECOPY OR ELECTRONIC MAIL WILL <u>NOT</u> BE ACCEPTED

| Class 10 – Existing Common Stock |
|---|

### INSTRUCTIONS FOR COMPLETING THIS CLASS 10 REGISTERED HOLDER BALLOT

1.      The Debtors are soliciting the votes of Registered Common Stockholders with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Class 10 Registered Holder Ballot or in these instructions (the "**Ballot Instructions**") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Registered Holder Ballot.

2.      To ensure that your vote is counted, you <u>must</u> complete the Ballot and take the following steps:  (a) make sure that the information required by Item 1 above has been inserted (if you do not know the amount of your claim, please contact the Voting and Claims Agent); (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 above; (c) provide the information required by Item 3 above <u>and</u> (d) sign, date and return an original of your Class 10 Registered Holder Ballot in accordance with paragraph 3 directly below.

3.      **Return of Class 10 Registered Holder Ballots**:  Your Class 10 Registered Holder Ballot MUST be returned to the Voting and Claims Agent so as to be **actually** **received** by the Voting and Claims Agent on or before the Common Stock Voting Deadline, which is 5:00 p.m. prevailing Central Time on AUGUST 13, 2019.  To ensure your vote is counted toward confirmation of the Plan, please read the following information carefully so that you understand where your Class 10 Registered Holder Ballot must be sent in order for it to be received before the Common Stock Voting Deadline:

4.      **Use of Hard Copy Ballot**.  To ensure that your hard copy Class 10 Registered Holder Ballot is counted, you must:  (a) complete your Class 10 Registered Holder Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 10 Registered Holder Ballot; and (c) clearly sign and return your original Class 10 Registered Holder Ballot in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to Weatherford International plc Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd, Suite 1440, New York, NY 10165.

5.      **Use of Online Ballot Portal**.  To ensure that your electronic Class 10 Registered Holder Ballot is counted, please follow the instructions of the Debtors' case administration website at https://cases.primeclerk.com/weatherfordballots/.  You will need to enter your unique E-Ballot identification number indicated below.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

<div align="center">

**E-Ballot ID:**_____

</div>

6.      If a Class 10 Registered Holder Ballot is received by the Voting and Claims Agent <u>after</u> the Common Stock Voting Deadline, it will not be counted, unless the Debtors have granted an extension of the Common Stock Voting Deadline in writing with respect to such Class 10 Registered Holder Ballot.  Additionally**,** the following Class 10 Registered Holder Ballots will <u>NOT</u> be counted:

> ➢    any Class 10 Registered Holder Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

> ➢    any Class 10 Registered Holder Ballot cast by a person or entity that does not hold a claim or equity interest in a class that is entitled to vote to accept or reject the Plan;

> ➢    any Class 10 Registered Holder Ballot that is properly completed, executed and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, or (c) partially accepts and partially rejects the Plan;

> ➤ any Class 10 Registered Holder Ballot submitted by facsimile, telecopy or electronic mail;

> ➤ any unsigned Class 10 Registered Holder Ballot;

> ➤ any Class 10 Registered Holder Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Voting and Claims Agent), any indenture trustee, or the Debtors' financial or legal advisors; and/or

> ➤ any Class 10 Registered Holder Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

7.   The method of delivery of Class 10 Registered Holder Ballots to the Voting and Claims Agent is at the election and risk of each Registered Common Stockholder.  Except as otherwise provided herein, such delivery will be deemed made to the Voting and Claims Agent only when the Voting and Claims Agent **actually receives** the originally executed Class 10 Registered Holder Ballot.  Instead of effecting delivery by first-class mail, it is recommended, though not required, that Holders use an overnight or hand delivery service.  In all cases, Registered Common Stockholders should allow sufficient time to assure timely delivery.

8.   If multiple Class 10 Registered Holder Ballots are received from the same Registered Common Stockholder, with respect to the same Class 10 Equity Interest prior to the Common Stock Voting Deadline, the last Class 10 Registered Holder Ballot timely received will supersede and revoke any earlier received Class 10 Registered Holder Ballots.

9.   You must vote all of your Existing Common Stock within Class 10 either to accept or reject the Plan and may not split your vote.  Further, if a Registered Common Stockholder has multiple Equity Interests within Class 10, the Debtors may, in their discretion, aggregate the Equity Interests of any particular Registered Common Stockholders with multiple Equity Interests within Class 10 for the purpose of counting votes.

10.   The Class 10 Registered Holder Ballot is not a letter of transmittal and may not be used for any purpose other than (i) to vote to accept or reject the Plan and (ii) opt-out of the Third Party Release.  Accordingly, at this time, Registered Common Stockholders should not surrender certificates or instruments representing or evidencing their Equity Interests, and neither the Debtors nor the Voting and Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Class 10 Registered Holder Ballot.

11.   This Class 10 Registered Holder Ballot does not constitute, and shall not be deemed to be, (a) a proof of an Equity Interest or (b) an assertion or admission of an Equity Interest.

12.   Please be sure to sign and date your Class 10 Registered Holder Ballot.  If you are signing a Class 10 Registered Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting and Claims Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Registered Common Stockholder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 10 Registered Holder Ballot.

13.   If you hold Claims or Equity Interests in more than one Class under the Plan you may receive more than one Ballot coded for each different Class.  Each Ballot votes only your Claims or Equity Interests indicated on that Ballot, so please complete and return each applicable Registered Holder Ballot and/or Ballot that you received.

**PLEASE MAIL YOUR CLASS 10 REGISTERED HOLDER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 10 REGISTERED HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE VOTING AND CLAIMS AGENT AT: 844-233-5155 (Domestic) or 917-942-6392 (International).**

---

**IF THE VOTING AND CLAIMS AGENT DOES NOT _ACTUALLY_ _RECEIVE_ THIS CLASS 10 REGISTERED HOLDER BALLOT FROM YOU ON OR BEFORE THE COMMON STOCK VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019, THEN YOUR VOTE TRANSMITTED HEREBY WILL NOT BE COUNTED.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

**RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED IN THE PLAN**

**Article X.B – _Release of Claims and Causes of Action_**

1.       _Release by the Debtors and their Estates_.  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "Debtor Releasing Parties") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; _provided_, _however_, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or**

order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this Article X.B shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims or any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement, in each case unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2.        *Release By Third Parties*.  Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "Releasing Parties") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third Party Release") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third Party Release shall not operate to waive or release (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; and/or (iii) any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or

69

prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Equity Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

## Article X.E – <u>Exculpation</u>

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents, the DIP Financing Documents, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including the Restructuring Support Agreement, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of the Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this <u>Article X.E</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in the Plan.

## Article X.G – <u>Injunction</u>

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE

US-DOCS\107885595

BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

**Article X.H – <u>Binding Nature Of Plan</u>**

  ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON AND ENTITY ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.

YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

<u>**Relevant Definitions Related to Release and Exculpation Provisions:**</u>

  "*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

  "*Indemnified Parties*" means each of the Debtors' and their respective Subsidiaries' respective current and former officers, directors, officers, and managers in their respective capacities as such.

  "*Non-Debtor Releasing Parties*" means, collectively: (a) the Prepetition Agents; (b) the New Senior Unsecured Notes Indenture Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Notes Indenture Trustee; (f) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (g) the Consenting Noteholders; (h) the Backstop Parties; (i) the Distribution Agents; (j) the Exit Facility Lenders; (k) the Exit Facility Agent; (l) the Holders of Existing Common Stock and Unexercised Equity Interests that do not affirmatively opt out of the Release; and (m) the Prepetition Noteholders that are not party to the Restructuring Support Agreement and do not affirmatively opt out of the Release.

  "*Released Party*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.
.

## ANNEX A

**PLEASE CHECK ONE BOX BELOW TO INDICATE THE PLAN CLASS AND CUSIP/ISIN TO WHICH THIS MASTER BALLOT PERTAINS (OR CLEARLY INDICATE SUCH INFORMATION DIRECTLY ON THE MASTER BALLOT OR ON A SCHEDULE THERETO).  IF MORE THAN ONE BOX IN THE CHART BELOW IS CHECKED, YOUR MASTER BALLOT WILL NOT BE TABULATED.**

| | Class 7 - Prepetition Notes Claims | |
|---|---|---|
| ☐ | 4.5% Senior Notes due 4/15/2022 | CUSIP 94707VAC4 / ISIN US94707VAC46 |
| ☐ | 5.125% Senior Note due 9/15/2020 | CUSIP 94707VAA8 / ISIN US94707VAA89 |
| ☐ | 5.875% Exchangeable Senior Notes due 7/1/2021 | CUSIP 947075AH0 / ISIN US947075AH03 |
| ☐ | 5.95% Senior Note due 4/15/2042 | CUSIP 94707VAD2 / ISIN US94707VAD29 |
| ☐ | 6.5% Senior Note due 8/1/2036 | CUSIP 947075AB3 / ISIN US947075AB33 |
| ☐ | 6.75% Senior Note due 9/15/2040 | CUSIP 94707VAB6 / ISIN US94707VAB62 |
| ☐ | 6.8% Senior Note due 6/15/2037 | CUSIP 947074AK6 / ISIN US947074AK66 |
| ☐ | 7% Senior Note due 3/15/2038 | CUSIP 947075AE7 / ISIN US947075AE71 |
| ☐ | 7.75% Senior Note due 6/15/2021 | CUSIP 947075AJ6 / ISIN US947075AJ68 |
| ☐ | 8.25% Senior Note due 6/15/2023 | CUSIP 947075AK3 / ISIN US947075AK32 |
| ☐ | 9.875% Senior Note due 2/15/2024 | CUSIP G9508CAA2 / ISIN USG9508CAA20 |
| ☐ | 9.875% Senior Note due 2/15/2024 | CUSIP 947075AL1 / ISIN US947075AL15 |
| ☐ | 9.875% Senior Note due 2/15/2024 | CUSIP 947075AN7 / ISIN US947075AN70 |
| ☐ | 9.875% Senior Note due 3/1/2039 | CUSIP 947075AG2 / ISIN US947075AG20 |
| ☐ | 9.875% Senior Note due 3/1/2025 | CUSIP 94707JAC1 / ISIN US94707JAC18 |
| ☐ | 9.875% Senior Note due 3/1/2025 | CUSIP 94707JAA5 / ISIN US94707JAA51 |
| ☐ | 9.875% Senior Note due 3/1/2025 | CUSIP U9432JAA2 / ISIN USU9432JAA26 |

## **EXHIBIT 3D**

**Class 10 Beneficial Ballot for Holders of
Existing Common Stock**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | Chapter 11 |
| WEATHERFORD INTERNATIONAL | § | |
| PLC, *et al.*, | § | (Jointly Administered) |
| | § | |
| Debtors. [1] | § | |
| | § | |

**CLASS 10 BENEFICIAL HOLDER BALLOT ACCEPTING**
**OR REJECTING THE JOINT PREPACKAGED PLAN OF**
**REORGANIZATION FOR WEATHERFORD INTERNATIONAL PLC AND**
**ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY**
**CODE OF REORGANIZATION OF WEATHERFORD INTERNATIONAL PLC**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS CLASS 10 BENEFICIAL HOLDER BALLOT CAREFULLY BEFORE COMPLETING THIS CLASS 10 BALLOT.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, ALL (I) PRE-VALIDATED CLASS 10 BENEFICIAL HOLDER BALLOTS; (II) CLASS 10 BENEFICIAL HOLDER BALLOTS OF REGISTERED RECORD OWNERS; AND (III) CLASS 10 MASTER BALLOTS CAST ON BEHALF OF CLASS 10 BENEFICIAL HOLDER BALLOTS THAT WERE NOT PRE-VALIDATED MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE VOTING AND CLAIMS AGENT (PRIME CLERK LLC) ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019 (THE "COMMON STOCK VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

A.     **IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE**:[2]

YOUR NOMINEE HAS NOT PRE-VALIDATED THIS CLASS 10 BENEFICIAL HOLDER BALLOT, WHICH MEANS THAT YOU MUST RETURN THIS CLASS 10 BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE IN SUFFICIENT TIME TO PERMIT YOUR NOMINEE TO DELIVER A CLASS 10 MASTER BALLOT INCLUDING YOUR VOTE TO THE VOTING AND CLAIMS AGENT BY THE COMMON STOCK VOTING DEADLINE.

_____

B.     **IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE VOTING AND CLAIMS AGENT (PRIME CLERK LLC):**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Weatherford International plc (6750); Weatherford International Ltd. (1344); and Weatherford International, LLC (5019).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 2000 St. James Place, Houston, TX 77056.

[2] "**Nominee**" means the bank, brokerage firm, or the agent thereof as the entity through which the Beneficial Holders hold the Prepetition Notes.

**EITHER (1) YOUR NOMINEE HAS PRE-VALIDATED THIS CLASS 10 BENEFICIAL HOLDER BALLOT FOR YOU; <u>OR</u> (2) YOU HAVE BEEN IDENTIFIED AS A REGISTERED RECORD OWNER.**

**THEREFORE, YOU MUST RETURN THIS CLASS 10 BENEFICIAL HOLDER BALLOT DIRECTLY TO THE VOTING AND CLAIMS AGENT SO IT IS <u>ACTUALLY RECEIVED</u> ON OR BEFORE THE COMMON STOCK VOTING DEADLINE**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Prepackaged Plan of Reorganization for Weatherford International plc and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "**Plan**") as set forth in the Disclosure Statement for the Plan (as may be amended from time to time, the "**Disclosure Statement**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

This Class 10 Beneficial Holder Ballot is being sent to you because the Debtors' records indicate that, as of the Common Stock Voting Record Date (the close of business on July 2, 2019), you are a Beneficial Holder of Existing Common Stock of Weatherford International plc (a "**Beneficial Common Stockholder**"). Accordingly, you have the right to vote to accept or reject the Plan.

Pursuant to the Plan, the Existing Common Stock will be cancelled without further notice to, approval of or action by any Entity. Each Beneficial Common Stockholder shall receive its Pro Rata share of (i) 1.0% of the New Common Stock, subject to dilution on account of the equity issued pursuant to the New Management Incentive Plan, the Tranche B Equity Conversion and the New Common Stock issuable pursuant to the New Warrants and (ii) the New Warrants.

Your rights are described in the Disclosure Statement, which is included (along with the Plan, Combined Notice and certain other materials) in the Solicitation Package you are receiving with this Class 10 Beneficial Holder Ballot. If you need to obtain additional solicitation materials, you may contact the Debtors' Voting and Claims Agent by: (1) visiting the Debtors' restructuring website at cases.primeclerk.com/weatherford; (2) writing to Weatherford International plc Ballot Processing, c/o Prime Clerk LLC One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (3) calling the Debtors' restructuring hotline at 844-233-5155 (Toll Free) or 917-942-6392 (International) or via email at weatherfordballots@primeclerk.com. You may also obtain these documents (other than a Ballot) and any other pleadings filed in the Debtors' Chapter 11 Cases (for a fee) via PACER at: www.deb.uscourts.gov or free of charge at cases.primeclerk.com/weatherford.

This Class 10 Beneficial Holder Ballot may not be used for any purpose other than (i) for casting votes to accept or reject the Plan and (ii) opting out of the Third Party Release. If you believe you have received this Class 10 Beneficial Holder Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting and Claims Agent <u>immediately</u> at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan in their entirety before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Equity Interests. Your Equity Interests have been placed in Class 10 – Existing Common Stock. The Bankruptcy Court can confirm the Plan and bind you if the Plan is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the allowed Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of Bankruptcy Code Section 1129(a). If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class rejecting the Plan and (b) otherwise satisfies the requirements of Bankruptcy Code Section 1129(b). If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or affirmatively vote to reject the Plan. To have your vote counted, you must complete, sign and return this Ballot to the Voting and Claims Agent by the Common Stock Voting Deadline.

Before completing this Class 10 Beneficial Holder Ballot, please read and follow the enclosed "Instructions for Completing this Class 10 Beneficial Holder Ballot" carefully to ensure that you complete, execute and return this Class 10 Beneficial Holder Ballot properly.

**Item 1**. Amount of Claim.

The undersigned hereby certifies that as of the Common Stock Voting Record Date (the close of business on July 2, 2019), the undersigned was the Beneficial Common Stockholder (or authorized signatory for the Beneficial Common Stockholder) of Class 10 – Existing Common Stock of the following number of Equity Interests, as denominated in shares (insert amount in box below if not already completed).  If your Equity Interests are held by an Nominee on your behalf and you do not know the amount of your Equity Interests, please contact your Nominee <u>immediately</u>:

| | |
|---|---|
| Amount of Existing Common Stock | _____ <br> (Shares) |

**Item 2**. **Vote on Plan.**

The Beneficial Common Stockholder of Class 10 – Existing Common Stock in the amount set above in Item 1 above votes to (please check <u>one</u> box below):

| | | | |
|---|---|---|---|
| ☐ | **ACCEPT** (vote FOR) the Plan | ☐ | **REJECT** (vote AGAINST) the Plan |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**<u>IMPORTANT INFORMATION REGARDING THE RELEASE OF CLAIMS BY THIRD PARTIES</u>**

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, WHICH ARE SET FORTH AT THE END OF THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.

**Check the box below if you elect not to grant the Third Party Release contained in Article X.B.2 of the Plan.  If you are not a signatory to the Restructuring Support Agreement, election to withhold consent is at your option.  If you submit your Ballot with this box checked, then you will be deemed <u>NOT</u> to consent to the Third Party Release set forth in Article X.B.2 of the Plan.  PLEASE BE ADVISED THAT BY NOT CHECKING THE BOX BELOW YOU ELECT TO GRANT THE THIRD-PARTY RELEASE IN EACH AND EVERY CAPACITY IN WHICH YOU HOLD A CLAIM AGAINST, OR EQUITY INTEREST IN, ANY OF THE DEBTORS.  YOU MUST AFFIRMATIVELY CHECK THE BOX BELOW IN ORDER TO OPT-OUT OF THE THIRD PARTY RELEASE.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE X.B.1 OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD PARTY RELEASE.  IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

☐    OPT-OUT ELECTION:  The undersigned elects to opt-out of the Third Party Releases contained in Article X.B.2 of the Plan.

**Item 3**.    **Certifications as to Class 10 – Existing Common Stock Held in Additional Accounts.**

By completing and returning this Class 10 Beneficial Holder Ballot, the undersigned Beneficial Common Stockholder certifies that either (1) it has not submitted any other Ballots for other Class 10 – Existing Common Stock held in other accounts or other record names or (2) it has provided the information specified in the following table for all other Class 10 – Existing Common Stock for which it has submitted additional Class 10 Beneficial Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED CLASS 10 – EXISTING COMMON STOCK ON A CLASS 10 BENEFICIAL HOLDER BALLOT OTHER THAN THIS CLASS 10 BENEFICIAL HOLDER BALLOT.

| Name of Beneficial Common Stockholder | Account Number | Shares of Other Class 10 – Existing Common Stock Voted |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |

**Item 4.**   **Certifications.**

By signing this Class 10 Beneficial Holder Ballot, the undersigned Beneficial Common Stockholder certifies to the Bankruptcy Court and the Debtors:

      a.      that either: (i) the undersigned is the Beneficial Common Stockholder of the Class 10 – Existing Common Stock being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a Beneficial Common Stockholder of the Class 10 – Existing Common Stock being voted, and, in either case, has the full power and authority to vote to accept or reject the Plan with respect to the Equity Interests identified in Item 1 above;

      b.      that the undersigned (or in the case of an authorized signatory, the Beneficial Common Stockholder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

      c.      that the undersigned has cast the same vote with respect to all Class 10 – Existing Common Stock in a single Class; and

By signing this Class 10 Beneficial Holder Ballot, the undersigned authorizes and instructs its Nominee (unless this is a pre-validated Class 10 Beneficial Holder Ballot or the Class 10 Beneficial Holder Ballot of a Registered Record Owner to be forwarded directly by the undersigned to the Voting and Claims Agent) (a) to furnish the voting information and the amount of Class 10 – Existing Common Stock the Nominee holds on its behalf in a Class 10 Master Ballot to be transmitted to the Voting and Claims Agent and (b) to retain this Class 10 Beneficial Holder Ballot and related information in its records for at least one year after the Effective Date of the Plan.

<table>
<tr><td>Name of<br>Beneficial Common<br>Stockholder:</td><td></td></tr>
</table>

Name of
Beneficial Common
Stockholder: _____

(Print or Type)

Social Security or Federal Tax Identification Number: _____

Signature: _____

Name of Signatory: _____

(If other than Beneficial Common Stockholder)

Title: _____

Address: _____

_____

_____

Date Completed: _____

No fees, commissions or other remuneration will be payable to any person for soliciting votes on the Plan.

If your address or contact information has changed, please note the new information here.

**PLEASE COMPLETE, SIGN AND DATE THIS CLASS 10 BENEFICIAL HOLDER BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED TO THE ADDRESSEE SPECIFIED THEREON.**

IF THE VOTING AND CLAIMS AGENT DOES NOT ACTUALLY RECEIVE THIS CLASS 10 BENEFICIAL HOLDER BALLOT (IF PRE-VALIDATED OR IF OF A REGISTERED RECORD OWNER) OR THE CLASS 10 MASTER BALLOT INCORPORATING THE VOTE CAST BY THIS CLASS 10 BENEFICIAL HOLDER BALLOT ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019, THEN YOUR VOTE TRANSMITTED BY THIS CLASS 10 BENEFICIAL HOLDER BALLOT WILL NOT BE COUNTED TOWARD CONFIRMATION OF THE PLAN.

IF YOU ARE RETURNING THIS CLASS 10 BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE PLEASE ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR BALLOT AND PROCESS YOUR VOTE ON A CLASS 10 MASTER BALLOT SUCH THAT THE CLASS 10 MASTER BALLOT IS RECEIVED BY THE VOTING AND CLAIMS AGENT ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019.

BALLOTS SENT BY FACSIMILE, TELECOPY OR ELECTRONIC MAIL WILL NOT BE ACCEPTED

**Class 10 – Existing Common Stock**

**INSTRUCTIONS FOR COMPLETING THIS CLASS 10 BENEFICIAL HOLDER BALLOT**

1.      The Debtors are soliciting the votes of Beneficial Common Stockholders with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Class 10 Beneficial Holder Ballot or in these instructions (the "**Ballot Instructions**") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Beneficial Holder Ballot.

2.      To ensure that your vote is counted, you <u>must</u> complete the Ballot and take the following steps:  (a) make sure that the information required by Item 1 above has been inserted (if you do not know the amount of your claim, please contact the Voting and Claims Agent); (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 above; (c) provide the information required by Item 3 above <u>and</u> (d) sign, date and return an original of your Class 10 Beneficial Holder Ballot in accordance with paragraph 3 directly below.

3.      **Return of Class 10 Beneficial Holder Ballots**:  Your Class 10 Beneficial Holder Ballot (if pre-validated or if you are a Registered Record Owner) and/or the Master Ballot incorporating the vote cast on your Class 10 Beneficial Holder Ballot MUST be returned to the Voting and Claims Agent so as to be **actually received** by the Voting and Claims Agent on or before the Common Stock Voting Deadline, which is 5:00 p.m. prevailing Central Time on AUGUST 13, 2019.  To ensure your vote is counted toward confirmation of the Plan, please read the following information carefully so that you understand where your Class 10 Beneficial Holder Ballot must be sent in order for it to be received before the Common Stock Voting Deadline:

> ➢      <u>Pre-validated Class 10 Beneficial Holder Ballots and Class 10 Beneficial Holder Ballots of Registered Record Owners</u>:  If you received a Class 10 Beneficial Holder Ballot and a return envelope addressed to the Voting and Claims Agent, then you must return your completed Class 10 Beneficial Holder Ballot <u>directly to the Voting and Claims Agent</u> so that it is **actually received** by the Voting and Claims Agent on or before the Common Stock Voting Deadline.

> ➢      <u>Not pre-validated Class 10 Beneficial Holder Ballot</u>:  If you received a Class 10 Beneficial Holder Ballot and a return envelope addressed to your Nominee, you must return your completed Class 10 Beneficial Holder Ballot <u>directly to your Nominee</u> so that it is **actually received** by the Nominee in sufficient time to permit your Nominee to deliver a Class 10 Master Ballot including your vote to the Voting and Claims Agent by the Common Stock Voting Deadline.

4.      If a Class 10 Master Ballot or Class 10 Beneficial Holder Ballot is received by the Voting and Claims Agent <u>after</u> the Common Stock Voting Deadline, it will not be counted, unless the Debtors have granted an extension of the Common Stock Voting Deadline in writing with respect to such Class 10 Master Ballot or Class 10 Beneficial Holder Ballot.  Additionally**,** the following Class 10 Beneficial Holder Ballots will <u>NOT</u> be counted:

> ➢      any Class 10 Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

> ➢      any Class 10 Beneficial Holder Ballot cast by a person or entity that does not hold a claim or equity interest in a class that is entitled to vote to accept or reject the Plan;

> ➢      any Class 10 Beneficial Holder Ballot that is properly completed, executed and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, or (c) partially accepts and partially rejects the Plan;

> ➢      any Class 10 Beneficial Holder Ballot submitted by facsimile, telecopy or electronic mail;

> ➢      any unsigned Class 10 Beneficial Holder Ballot;

> ➢ any Class 10 Beneficial Holder Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Voting and Claims Agent), any indenture trustee, or the Debtors' financial or legal advisors; and/or

> ➢ any Class 10 Beneficial Holder Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

5.    The method of delivery of Class 10 Beneficial Holder Ballots to the Voting and Claims Agent or your Nominee is at the election and risk of each Beneficial Common Stockholder.  Except as otherwise provided herein, such delivery will be deemed made to the Voting and Claims Agent only when the Voting and Claims Agent **actually receives** the originally executed Class 10 Beneficial Holder Ballot or Class 10 Master Ballot incorporating the Class 10 Beneficial Holder Ballot.  Instead of effecting delivery by first-class mail, it is recommended, though not required, that Holders use an overnight or hand delivery service.  In all cases, Beneficial Common Stockholders should allow sufficient time to assure timely delivery.

6.    If multiple Class 10 Beneficial Holder Ballots are received from the same Beneficial Common Stockholder, with respect to the same Class 10 Equity Interest prior to the Common Stock Voting Deadline, the last Class 10 Beneficial Holder Ballot timely received will supersede and revoke any earlier received Class 10 Beneficial Holder Ballots.

7.    You must vote all of your Existing Common Stock within Class 10 either to accept or reject the Plan and may not split your vote.  Further, if a Beneficial Common Stockholder has multiple Equity Interests within Class 10, the Debtors may, in their discretion, aggregate the Equity Interests of any particular Beneficial Common Stockholders with multiple Equity Interests within Class 10 for the purpose of counting votes.

8.    The Class 10 Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than (i) to vote to accept or reject the Plan and (ii) opt-out of the Third Party Release.  Accordingly, at this time, Beneficial Common Stockholders should not surrender certificates or instruments representing or evidencing their Equity Interests, and neither the Debtors nor the Voting and Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Class 10 Beneficial Holder Ballot.

9.    This Class 10 Beneficial Holder Ballot does not constitute, and shall not be deemed to be, (a) a proof of an Equity Interest or (b) an assertion or admission of an Equity Interest.

10.    Please be sure to sign and date your Class 10 Beneficial Holder Ballot.  If you are signing a Class 10 Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting and Claims Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Common Stockholder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 10 Beneficial Holder Ballot.

11.    If you hold Claims or Equity Interests in more than one Class under the Plan you may receive more than one Ballot coded for each different Class.  Each Ballot votes only your Claims or Equity Interests indicated on that Ballot, so please complete and return each applicable Beneficial Holder Ballot and/or Ballot that you received.

**PLEASE MAIL YOUR CLASS 10 BENEFICIAL HOLDER BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 10 BENEFICIAL HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE VOTING AND CLAIMS AGENT AT:  844-233-5155 (Domestic) or 917-942-6392 (International).**

> **IF THE VOTING AND CLAIMS AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS CLASS 10 BENEFICIAL HOLDER BALLOT FROM YOU <u>OR</u> THE CLASS 10 MASTER BALLOT CONTAINING YOUR VOTE FROM YOUR NOMINEE ON OR BEFORE THE COMMON STOCK VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019, THEN YOUR VOTE TRANSMITTED HEREBY WILL NOT BE COUNTED.**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

**<u>RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED IN THE PLAN</u>**

**Article X.B – <u>Release of Claims and Causes of Action</u>**

1.      ***<u>Release by the Debtors and their Estates</u>***.  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "<u>Debtor Releasing Parties</u>") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released**

pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this **Article X.B** shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims or any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement, in each case unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2.     *Release By Third Parties*.  Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "Releasing Parties") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third Party Release") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third Party Release shall not operate to waive or release (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; and/or (iii) any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third Party Release.

US-DOCS\107885595

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Equity Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.**

**Article X.E – Exculpation**

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents, the DIP Financing Documents, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including the Restructuring Support Agreement, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of the Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this Article X.E shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in the Plan.

**Article X.G – Injunction**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

## Article X.H – <u>Binding Nature Of Plan</u>

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON AND ENTITY ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.

YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

### <u>Relevant Definitions Related to Release and Exculpation Provisions</u>:

"*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

"*Indemnified Parties*" means each of the Debtors' and their respective Subsidiaries' respective current and former directors, officers, and managers in their respective capacities as such.

"*Non-Debtor Releasing Parties*" means, collectively: (a) the Prepetition Agents; (b) the New Senior Unsecured Notes Indenture Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Notes Indenture Trustee; (f) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (g) the Consenting Noteholders; (h) the Backstop Parties; (i) the Distribution Agents; (j) the Exit Facility Lenders; (k) the Exit Facility Agent; (l) the Holders of Existing Common Stock and Unexercised Equity Interests that do not affirmatively opt out of the Release; and (m) the Prepetition Noteholders that are not party to the Restructuring Support Agreement and do not affirmatively opt out of the Release.

"*Released Party*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.
.

US-DOCS\107885595

**<u>EXHIBIT 3E</u>**

**Class 10 Master Ballot for
Beneficial Common Stockholders**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| | § | Chapter 11 |
| WEATHERFORD INTERNATIONAL | § | |
| PLC, *et al.*, | § | (Jointly Administered) |
| | § | |
| Debtors. [1] | § | |
| | § | |

**MASTER BALLOT FOR NOMINEES OF
BENEFICIAL COMMON STOCKHOLDERS OF CLASS 10 - EXISTING COMMON STOCK**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS MASTER HOLDER BALLOT CAREFULLY <u>BEFORE</u> COMPLETING THIS CLASS 10 MASTER BALLOT.

**THIS CLASS 10 MASTER BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO THAT IT IS <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING AND CLAIMS AGENT (PRIME CLERK LLC) ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019 (THE "<u>COMMON STOCK VOTING DEADLINE</u>"):**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Prepackaged Plan of Reorganization for Weatherford International plc and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "**Plan**") as set forth in the Disclosure Statement for the Plan (as may be amended from time to time, the "**Disclosure Statement**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

This Class 10 Master Ballot is being sent to you because the Debtors' records indicate that, as of the Common Stock Voting Record Date (the close of business on July 2, 2019), you are a bank, brokerage firm, or the agent thereof (each, a "**Nominee**") of a beneficial holder of Existing Common Stock of Weatherford International plc (a "**Beneficial Common Stockholder**").

Pursuant to the Plan, the Existing Common Stock will be cancelled without further notice to, approval of or action by any Entity. Each Holder of Existing Common Stock shall receive its Pro Rata share of (i) 1.0% of the New Common Stock, subject to dilution on account of the equity issued pursuant to the New Management Incentive Plan, the Tranche B Equity Conversion and the New Common Stock issuable pursuant to the New Warrants and (ii) the New Warrants.

As a Nominee, you are required, within five (5) business days of your receipt of the Solicitation Packages, to deliver a Solicitation Package, including a Class 10 Beneficial Holder Ballot, to each Beneficial Common Stockholder for whom you hold Existing Common Stock as of the Common Stock Voting Record Date and take any action required to enable such Beneficial Common Stockholder to timely vote its Claim to accept or reject the Plan. You should include in each Solicitation Package a return envelope addressed to you (and not include a return envelope addressed to the Voting and Claims Agent), unless you choose to pre-validate such Class 10 Beneficial Holder Ballot,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Weatherford International plc (6750); Weatherford International Ltd. (1344); and Weatherford International, LLC (5019). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 2000 St. James Place, Houston, TX 77056.

in which case the Solicitation Package should include a return envelope addressed only to the Voting and Claims Agent (Prime Clerk LLC). With respect to any Class 10 Beneficial Holder Ballots returned to you, you must (1) execute this Class 10 Master Ballot so as to reflect the voting instructions given to you and the Third Party Release election set forth in the Class 10 Beneficial Holder Ballots by the Beneficial Common Stockholders for whom you hold Existing Common Stock and (2) forward this Class 10 Master Ballot to the Voting and Claims Agent in accordance with the Class 10 Master Ballot Instructions accompanying this Class 10 Master Ballot.

If you are both the Registered Record Owner and Beneficial Common Stockholder and you wish to vote such Existing Common Stock, you <u>MUST</u> complete a Class 10 Beneficial Holder Ballot and return it to the Voting and Claims Agent prior to the Common Stock Voting Deadline.

If you need to obtain additional solicitation materials, you may contact the Debtors' Voting and Claims Agent by: (1) visiting the Debtors' restructuring website at https://cases.primeclerk.com/weatherford/; (2) writing to Weatherford International plc Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (3) calling the Debtors' restructuring hotline at 844-233-5155 (Toll Free) or 917-942-6392 (International) or via email at weatherfordballots@primeclerk.com. You may also obtain these documents (other than a Ballot) and any other pleadings filed in the Debtors' Chapter 11 Cases (for a fee) via PACER at: www.deb.uscourts.gov or free of charge at cases.primeclerk.com/weatherford.

This Class 10 Master Ballot may not be used for any purpose other than (i) for casting votes to accept or reject the Plan and (ii) transmitting the Third Party Release elections. If you believe you have received this Class 10 Master Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting and Claims Agent <u>immediately</u> at the address or telephone number set forth above.

<div style="border:1px solid black; padding:8px; text-align:center;">

**If the Voting and Claims Agent does not <u>actually</u> <u>receive</u> this Class 10 Master Ballot on or before the Common Stock Voting Deadline, which is 5:00 p.m. prevailing Central Time on AUGUST 13, 2019, then the Beneficial Common Stockholders' votes transmitted on such Class 10 Master Ballot will NOT be counted.**

</div>

Before completing this Class 10 Master Ballot, please read and follow the enclosed "Instructions for Completing this Class 10 Master Ballot" carefully to ensure that you complete, execute and return this Class 10 Master Ballot properly.

<div style="text-align:center;">

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, WHICH ARE SET FORTH AT THE END OF THIS BALLOT. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.

</div>

<u>Item 1</u>. **Certification of Authority to Vote.**

The undersigned hereby certifies that, as of the Common Stock Voting Record Date (the close of business on July 2, 2019), the undersigned (please check the applicable box):

❑ is a Nominee the Beneficial Common Stockholder in the amount of Class 10 – Existing Common Stock listed in Item 2 below and is the registered Beneficial Common Stockholder of any such Class 10 – Existing Common Stock; or

❑ is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a Nominee that is the registered Beneficial Common Stockholder in the amount of Class 10 – Existing Common Stock listed in Item 2 below; or

❑ has been granted a proxy (an original of which is annexed hereto) from (1) a Nominee or (2) a Beneficial Common Stockholder, that is the registered Beneficial Common Stockholder in the amount of Class 10 – Existing Common Stock listed in Item 2 below;

and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Common Stockholder as described in Item 2 below.

**Item 2.  Class 10 Equity Interests Vote.**

       <u>Number of Beneficial Common Stockholders</u>:  The undersigned transmits the following votes of Beneficial Common Stockholders in respect of their Class 10 Existing Common Stock Equity Interests.  The undersigned certifies that the following Beneficial Common Stockholders of Class 10 Existing Common Stock Equity Interests, as identified by their respective customer account numbers set forth below, are Beneficial Common Stockholders of the Debtors' Existing Common Stock as of the Common Stock Voting Record Date and have delivered to the undersigned, as Nominee, Class 10 Beneficial Holder Ballots casting such votes.

       <u>To Properly Complete the Following Table</u>:  Indicate in the appropriate column below the amount of common stock, as denominated in shares, voted for each account (please use additional sheets of paper if necessary and, if possible, attach such information to this Class 10 Master Ballot in the form of the following table).  <u>Please note</u>: (1) each account of a Beneficial Common Stockholder must vote all such Beneficial Common Stockholder's Class 10 – Existing Common Stock to accept or reject the Plan and may <u>not</u> split such vote; and (2) do not count any Class 10 Beneficial Holder Ballot executed by the Beneficial Common Stockholder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan.

| **Your Customer Account Number For Each Beneficial Common Stockholder of Voting Class 10 – Existing Common Stock** | **Amount of Existing Common Stock** In order to vote on the Plan, the Beneficial Common Stockholder must have checked a box in Item 2 on the Class 10 Beneficial Holder Ballot to ACCEPT or REJECT the Plan.  In addition, if the Beneficial Common Stockholder returned a signed Class 10 Beneficial Holder Ballot but did not check a box in Item 2 or checked both boxes in Item 2, the Class 10 Beneficial Holder Ballot will not be counted for purposes of determining acceptance or rejection of the Plan. | | **Consent to Third Party Release** Check below if the Beneficial Common Stockholder checked the "Opt-Out Election" box in Item 2 on the Class 10 Beneficial Holder Ballot? |
|---|---|---|---|
| | **ACCEPT THE PLAN** | **REJECT THE PLAN** | |
| 1. | $ | $ | ☐ |
| 2. | $ | $ | ☐ |
| 3. | $ | $ | ☐ |
| 4. | $ | $ | ☐ |
| 5. | $ | $ | ☐ |
| 6. | $ | $ | ☐ |
| 7. | $ | $ | ☐ |
| 8. | $ | $ | ☐ |
| 9. | $ | $ | ☐ |
| 10. | $ | $ | ☐ |
| | **TOTALS:** | $ | $ | ☐ |

**Item 3.  Certification as to Transcription of Information from Item 3 of the Class 10 Beneficial Holder Ballots as to Class 10 – Existing Common Stock Equity Interests Voted Through Other Class 10 Beneficial Holder Ballots.**

       The undersigned certifies that it has transcribed in the following table the information, if any, provided by Beneficial Common Stockholders in Item 3 of each of the Beneficial Common Stockholder's original Class 10 Beneficial Holder Ballots, identifying any Class 10 Existing Common Stock Equity Interests for which such Beneficial Common Stockholders have submitted other Class 10 Beneficial Holder Ballots other than to the undersigned:

| Your Customer Account Number For Each Beneficial Holder of Voting Class 10 – Existing Common Stock | TRANSCRIBE FROM ITEM 3 OF THE CLASS 10 BENEFICIAL HOLDER BALLOTS: | | |
| --- | --- | --- | --- |
| | Account Number | Name of Beneficial Common Stockholder | Shares of Other Class 10 – Existing Common Stock Voted |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

**Item 4.**  **Certification.**

By signing this Class 10 Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)     it has received a copy of the Disclosure Statement, the Class 10 Beneficial Holder Ballots and the Solicitation Package and has delivered the same to the Beneficial Common Stockholders listed on the Beneficial Holder Ballots;

(b)     it has received a completed and signed Beneficial Holder Ballot from each Beneficial Common Stockholder listed in Item 2 of this Class 10 Master Ballot;

(c)     it is the registered Beneficial Common Stockholder of the Existing Common Stock being voted;

(d)     it has been authorized by each such Beneficial Common Stockholder to vote on the Plan and to make applicable elections;

(e)     it has properly disclosed:

i)      the number of Beneficial Common Stockholders who completed Class 10 Beneficial Holder Ballots;

ii)     the respective amounts of the Class 10 – Existing Common Stock owned, as the case may be, by each Beneficial Common Stockholder who completed a Class 10 Beneficial Holder Ballot;

iii)    each such Beneficial Common Stockholder's respective vote concerning the Plan and election to opt-out or not to opt-out of the Third Party Release;

iv)     the customer account or other identification number for each such Beneficial Common Stockholder;

(f)     each such Beneficial Common Stockholder has certified to the undersigned that it is eligible to vote on the Plan; and

(g)     it will maintain Class 10 Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Common Stockholders (whether properly completed or defective) for at least one year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

Name of Nominee: _____

<div align="center">(Print or Type)</div>

Participant Number: _____

Name of Proxy Holder or Agent for Nominee: _____

<div align="center">(Print or Type)</div>

Social Security or Federal Tax Identification Number: _____

Signature: _____

Name of Signatory: _____

<div align="center">(If other than Nominee)</div>

Title: _____

Address: _____

_____

_____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS CLASS 10 MASTER BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

<div align="center">

Weatherford International plc Ballot Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165
OR VIA EMAIL
email: weatherfordballots@primeclerk.com
Telephone:  844-233-5155 (Toll Free)
917-942-6392 (International)

</div>

**IF THE VOTING AND CLAIMS AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS CLASS 10 MASTER BALLOT ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019, THE VOTES CAST HEREBY WILL <u>NOT</u> BE COUNTED.**

**BALLOTS SENT BY FACSIMILE OR TELECOPY WILL <u>NOT</u> BE ACCEPTED.**

| **Class 10— Nominees of Beneficial Holders of Prepetition Equity** |
| --- |

<div align="center">

**INSTRUCTIONS FOR COMPLETING THIS CLASS 10 MASTER BALLOT**

</div>

1.       The Debtors are soliciting the votes of Holders of Claims and Equity Interests with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Class 10 Master Ballot or in these instructions (the "Class 10 Master Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Class 10 Master Ballot.

**HOW TO VOTE:**

2. Within five (5) business days of your receipt of the Solicitation Packages, you must distribute Solicitation Package(s), including Class 10 Beneficial Holders Ballots, to each Beneficial Common Stockholder of Class 10 – Existing Common Stock as of the Common Stock Voting Record Date and take any action required to enable each such Beneficial Common Stockholder to timely vote their Equity Interests.

3. If you are both the record holder and the Beneficial Common Stockholder of any principal amount of the Prepetition Notes and you wish to vote any Class 10 Equity Interests on account thereof, then you <u>MUST</u> complete and execute an individual Class 10 Beneficial Holder Ballot and return the same to the Voting and Claims Agent in accordance with these instructions and the instructions attached to such Class 10 Beneficial Holder Ballot.

4. If you are transmitting the votes of any Beneficial Common Stockholders other than yourself (i.e. you are a Nominee), you may, at your option, elect to pre-validate the Class 10 Beneficial Holder Ballots sent to you by the Voting and Claims Agent.  Based on your decision as to whether or not to pre-validate Beneficial Holders Ballots, the instructions in <u>either</u> paragraph (5) <u>or</u> paragraph (6) below apply (but not both).

5. **PRE-VALIDATED CLASS 10 BENEFICIAL HOLDER BALLOTS**:   A Nominee "pre-validates" a Class 10 Beneficial Holder Ballot by indicating thereon the record holder of the Existing Common Stock voted, the amount of the Existing Common Stock held by the Beneficial Common Stockholder and the appropriate account numbers through which the Beneficial Common Stockholder's holdings are derived.  The Nominee must also complete and execute the Class 10 Beneficial Holders Ballot (other than Item 2 and Item 3 therein).  If you choose to pre-validate individual Class 10 Beneficial Holder Ballots, you must <u>immediately</u>:  (a) "pre-validate" the individual Class 10 Beneficial Holder Ballot contained in the Solicitation Package sent to you by the Voting and Claims Agent and (b) forward the Solicitation Package to the Beneficial Common Stockholder for voting, including:

  iv. the pre-validated Class 10 Beneficial Holder Ballot;

  v. a return envelope addressed to the Voting and Claims Agent as follows:  Weatherford International plc Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and

  vi. clear instructions stating that Beneficial Common Stockholders must return their pre-validated Class 10 Beneficial Holder Ballots directly to the Voting and Claims Agent so that it is **actually received** by the Voting and Claims Agent on or before the Common Stock Voting Deadline.

6. **NON-PRE-VALIDATED CLASS 10 BENEFICIAL HOLDER BALLOTS:** If you do <u>NOT</u> choose to pre-validate individual Class 10 Beneficial Holder Ballots, you must:

  iii. <u>immediately</u> forward the Solicitation Package(s) sent to you by the Voting and Claims Agent to each Beneficial Common Stockholder for voting, including: (a) the Class 10 Beneficial Holder Ballot; (b) a return envelope addressed to the Nominee; and (c) clear instructions stating that Beneficial Common Stockholders must return their Class 10 Beneficial Holder Ballot directly to the Nominee so that it is **actually received** by the Nominee with enough time for the Nominee to prepare the Class 10 Master Ballot in accordance with paragraph (ii) directly below and return the Class 10 Master Ballot to the Voting and Claims Agent so it is **actually received** by the Voting and Claims Agent on or before the Common Stock Voting Deadline; and

  iv. upon receipt of completed, executed Class 10 Beneficial Holder Ballots returned to you by a Beneficial Common Stockholder you must:

> check the appropriate box in Item 1 of the Class 10 Master Ballot;

> compile and validate the votes, elections, and other relevant information of each such Beneficial Common Stockholder in Item 2 and Item 3 of the Class 10 Master Ballot using the customer account number or other identification number assigned by you to each such Beneficial Common Stockholder;

> date and execute the Class 10 Master Ballot;

> transmit such Class 10 Master Ballot to the Voting and Claims Agent by the Common Stock Voting Deadline; and

> retain such Class 10 Beneficial Holder Ballots in your files for a period of at least one year after the Effective Date of the Plan (as you may be ordered to produce the Class 10 Beneficial Holder Ballots to the Debtors or the Bankruptcy Court).[2]

7.      If a Class 10 Master Ballot is received *after* the Common Stock Voting Deadline, it will not be counted, unless the Debtors have granted an extension of the Common Stock Voting Deadline in writing with respect to such Class 10 Master Ballot.  Additionally, the following Class 10 Master Ballots (and therefore Class 10 Beneficial Holder Ballots reflected thereon) will NOT be counted:

> any Class 10 Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

> any Class 10 Master Ballot cast by a person or entity that does not hold a claim or equity interest in a class that is entitled to vote to accept or reject the Plan;

> any Class 10 Master Ballot that is properly completed, executed and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) with respect to a single account number, indicates both an acceptance and rejection of the Plan, or (c) with respect to a single account number, partially accepts and partially rejects the Plan;

> any Class 10 Master Ballot submitted by facsimile, telecopy or electronic mail;

> any unsigned Class 10 Master Ballot;

> any Class 10 Master Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Voting and Claims Agent), any indenture trustee, or the Debtors' financial or legal advisors; and/or

> any Class 10 Master Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

8.      Any Ballot returned to you by a Beneficial Common Stockholder shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver to the Voting and Claims Agent a Class 10 Master Ballot that reflects the vote of such Beneficial Common Stockholders by the Common Stock Voting Deadline or otherwise validate the Class 10 Beneficial Holder Ballot in a manner acceptable to the Voting and Claims Agent.

---

[2] In addition, you are authorized to collect votes to accept or to reject the Plan from beneficial owners in accordance with their customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Owner Ballot, and collecting votes from beneficial owners through online voting, by phone, facsimile, or other electronic means.

9.      The method of delivery of Class 10 Master Ballots to the Voting and Claims Agent is at the election and risk of each Nominee.  Except as otherwise provided herein, such delivery will be deemed made only when the Voting and Claims Agent **actually receives** the originally executed Class 10 Master Ballot.  Instead of effecting delivery by first-class mail, it is recommended, though not required, that Nominees use an overnight or hand delivery service.  In all cases, Nominees should allow sufficient time to assure timely delivery.

10.      If multiple Class 10 Master Ballots are received from the same Nominees with respect to the same Class 10 Beneficial Holder Ballot belonging to a Beneficial Common Stockholder prior to the Common Stock Voting Deadline, the last Class 10 Master Ballot timely received will supersede and revoke any earlier received Class 10 Master Ballots.  If you receive more than one Class 10 Beneficial Holder Ballot from the same Beneficial Common Stockholder, the latest dated Class 10 Beneficial Holder Ballot you receive before you submit the Class 10 Master Ballot shall be deemed to supersede any prior Class 10 Beneficial Holder Ballots submitted by such Beneficial Common Stockholder and you should complete the Class 10 Master Ballot accordingly.

11.      The Class 10 Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, Holders of Equity Interests should not surrender certificates or instruments representing or evidencing their Equity Interests and you should not accept delivery of any such certificates or instruments surrendered together with a Class 10 Beneficial Holder Ballot.

12.      This Class 10 Master Ballot does not constitute, and shall not be deemed to be, (a) a proof of Claim or (b) an assertion or admission of a Claim.

13.      Please be sure to properly execute your Class 10 Master Ballot.  You must:  (a) sign and date your Class 10 Master Ballot; (b) if applicable, indicate that you are signing a Class 10 Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Voting and Claims Agent, the Debtors or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Beneficial Common Stockholder; and (c) provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 10 Master Ballot.

14.      No fees or commissions or other remuneration will be payable to any Nominee for soliciting Class 10 Beneficial Holder Ballots accepting or rejecting the Plan.  The Debtors will, however, upon request, reimburse you for customary mailing and handling expenses incurred by you in forwarding the Class 10 Beneficial Holder Ballots and other enclosed materials to your customers.

**PLEASE MAIL YOUR CLASS 10 MASTER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 10 MASTER BALLOT
OR THE VOTING INSTRUCTIONS OR PROCEDURES, PLEASE CALL:**

**THE VOTING AND CLAIMS AGENT AT:  844-233-5155 (TOLL FREE)
917-942-6392 (INTERNATIONAL)
OR VIA EMAIL: WEATHERFORDBALLOTS@PRIMECLERK.COM.**

US-DOCS\107885595

> **NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE VOTING AND CLAIMS AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS WITH RESPECT TO THE PLAN.**

**IF THE VOTING AND CLAIMS AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS MASTER BALLOT ON OR BEFORE THE COMMON STOCK VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 13, 2019, THEN THE VOTES TRANSMITTED THEREBY WILL NOT BE COUNTED.**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

### RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED IN THE PLAN

**Article X.B – <u>Release of Claims and Causes of Action</u>**

1.      *<u>Release by the Debtors and their Estates</u>*.  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "<u>Debtor Releasing Parties</u>") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, and/or (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or**

order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this **Article X.B** shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims or any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement, in each case unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2.  ***Release By Third Parties***.  Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "**Releasing Parties**") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) and their respective assets and properties (the "**Third Party Release**") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors or their Affiliates, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, and the DIP Financing Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the DIP Financing Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; **provided, however**, that the foregoing provisions of this Third Party Release shall not operate to waive or release (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; and/or (iii) any obligations of any Entity arising after the Effective Date under the Exit Facility Loan Documents or any document, instrument or agreement set forth in the Plan Supplement.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order shall permanently enjoin the commencement or

prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Equity Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

## Article X.E – <u>Exculpation</u>

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents, the DIP Financing Documents, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including the Restructuring Support Agreement, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of the Plan; <i>provided, however,</i> that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; <u>provided, further,</u> that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this <u>Article X.E</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in the Plan.

## Article X.G – <u>Injunction</u>

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE

US-DOCS\107885595

BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

**Article X.H – <u>Binding Nature Of Plan</u>**

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON AND ENTITY ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.

YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

<u>Relevant Definitions Related to Release and Exculpation Provisions:</u>

"*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

"*Indemnified Parties*" means each of the Debtors' and their respective Subsidiaries' respective current and former officers, directors, officers, and managers in their respective capacities as such.

"*Non-Debtor Releasing Parties*" means, collectively: (a) the Prepetition Agents; (b) the New Senior Unsecured Notes Indenture Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Notes Indenture Trustee; (f) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (g) the Consenting Noteholders; (h) the Backstop Parties; (i) the Distribution Agents; (j) the Exit Facility Lenders; (k) the Exit Facility Agent; (l) the Holders of Existing Common Stock and Unexercised Equity Interests that do not affirmatively opt out of the Release; and (m) the Prepetition Noteholders that are not party to the Restructuring Support Agreement and do not affirmatively opt out of the Release.

"*Released Party*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agents; (d) the New Senior Unsecured Notes Indenture Trustee; (e) the DIP Agent; (f) the DIP Lenders; (g) the Prepetition Notes Indenture Trustee; (h) the Ad Hoc Noteholder Committee and the members thereof in their capacities as such; (i) the Consenting Noteholders; (j) the Backstop Parties; (k) the Distribution Agents; (l) the Exit Facility Lenders; (m) the Exit Facility Agent, and (n) with respect to each of the foregoing Entities in clauses (a) through (m), each such Entity's Related Persons, in each case solely in their capacity as such.

US-DOCS\107885595